**Larry D. DEVORAK and Jacqueline R. Devorak, Plaintiffs/Appellants,**

v.

**Eddie PATTERSON and T & N Automart, Inc., Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 12, 1995.

Permission to Appeal Denied by Supreme Court Sept. 25, 1995.

Clinton W. Watkins, Brentwood, for Plaintiffs/Appellants.

Jay Norman, Nashville, for Defendants/Appellees.

## OPINION

LEWIS, Judge.

This appeal arose out of the sale of a Lincoln Town Car by defendants to the plaintiffs. The trial judge tried the case without a jury, and at the close of all proof the court found that the "plaintiffs had failed to carry their burden of proof" and rendered judgment for the defendants. Costs were assessed to the defendants.

The pertinent facts are as follows.

In September 1993 plaintiffs made a trip from their home in Florida to Michigan to visit friends. On their return trip to Florida, they began looking at newspaper ads in search of a Lincoln Town Car. They looked at the ads in newspapers in South Bend, Indiana, Louisville, Kentucky, and Nashville, Tennessee.

On Friday, 24 September 1993 they looked in the Tennessean Classified Ads and saw three Lincoln Town Cars. The first two did not satisfy them because of high mileage. In the third advertisement, the defendants described a Lincoln Town Car having low mileage priced at $6,750.00.

Plaintiffs went to the defendant's car lot, looked at the car and then "test drove" it for ten to fifteen minutes. The overall condition of the car "appeared to be good," however, the power door locks and electric mirrors did not work. Plaintiff Larry Devorak began negotiating with defendant Eddie Patterson and offered $5,500.00 for the automobile. Patterson countered that he would be willing to take $6,000.00 cash. Plaintiffs then went to lunch and later returned to the car lot and told Mr. Patterson they would like to purchase the car but he did not have $6,000.00 in cash. Plaintiffs then went to the bank with Mr. Patterson to see if plaintiffs' bank could arrange for them to obtain $6,000.00 to purchase the car. A credit line extension was obtained through plaintiffs' VISA card for $6,000.00 in cash.

Plaintiffs and defendant left the bank and returned to defendant's car lot where plaintiffs paid cash for the automobile. Defendant Patterson signed the back of the title and gave it to plaintiffs to sign. Plaintiff Larry Devorak saw on the front of the title the words "water damaged vehicle." Plaintiff Devorak testified that he was concerned and asked defendant Patterson what was meant by "water damaged vehicle." The defendant reportedly told him the car had been in water up to the tires but no higher, which required the warning to be on the title. The defendant handed the plaintiff a form to sign stating that there was "flood damage." Plaintiff Devorak inspected the car and found no indication that there was any rust, odor, or other signs of water damage.

The plaintiffs purchased the car and drove it to Florida. When they returned to Florida, they applied for and received a temporary title. Thereafter, Mrs. Devorak used the car to go play bingo. When she returned, she told Mr. Devorak that the cigarette lighter would not work. He looked in the glove box for the owner's manual and located the name of the former owner. He then called the former owner and talked with him about the problem with the cigarette lighter, door locks, and mirrors. The former owner informed plaintiff that the mileage on the car was accurate, and that the car had been damaged by water while the former owner possessed it.

Later, a State of Florida representative informed the plaintiffs that the automobile title for the Lincoln Town Car had previously been cancelled and the vehicle was deemed to be "salvage-unrebuildable." The state representative informed the plaintiff of a procedure under Florida law where one can have a title issued for a "salvage-unrebuildable" vehicle. The representative explained to the plaintiff that it would be expensive to have a title issued this way, and that there was no assurance that the title would issue. Plaintiff Jacqueline Devorak corroborated most, if not all, of her plaintiff husband's testimony.

Defendant Eddie Patterson testified that he sold the 1988 Lincoln Town Car to the plaintiffs in September 1993, that he was aware that the Town Car was originally titled in Florida, and that it had been in a flood and the title read "salvage-unrebuildable" when he bought the car. He was also aware that the Devoraks were from Florida and planned to take the car back to Florida. He testified that he informed the Devoraks of the full extent of the damage to the car and that they read and signed all documents which indicated that the car had water damage. He testified that he never informed the Devoraks that the water had only been up to the tires and no higher. Two of defendant employees, Juanita Williams and Wayne Williams corroborated the testimony of defendant Patterson.

■ The trial court made no findings of fact. Without findings of fact there is nothing in the record upon which the presumption of correctness set forth in Tennessee Rule of Appellate Procedure 13(d) can attach. This court, therefore, reviews the record de novo without a presumption of correctness. *Goodman v. Memphis Park Comm'n*, 851 S.W.2d 165 (Tenn.App.1992).

The first issue presented by the plaintiff is: "The trial court erred in failing to hold that, absent full disclosure, a sale to a consumer of an automobile that cannot be titled and legally operated in the state of the purchasers' residence is an unfair and deceptive act in violation of the Tennessee Consumer Protection Act."

Plaintiffs insist that the defendants are guilty of a violation of the Tennessee Consumer Protection Act because the plaintiffs claim they are not able to title the Lincoln Town Car in their home state of Florida.

Defendants argue that the contract was fully performed in Tennessee and the question therefore becomes whether a Tennessee title could be obtained. Plaintiffs were given a valid Tennessee title. However, plaintiff Devorak testified that he "was informed that there was some procedure and place under Florida law where I could hire an attorney and attempt to have a title issued for the vehicle. However, I was informed that it would be prohibitively expensive to do so and

there could be no assurance that a title would be issued."

We are unable to say with certainty that the plaintiffs are unable to title the automobile in Florida given the evidence available. The only evidence we have is that plaintiffs believe it would be too expensive to title in Florida.

We are of the opinion that if the plaintiffs are entitled to damages, it would be for the amount that would be involved in titling the automobile in Florida; however, there is no proof in this record as to what the damages would be.

■ The plaintiffs also contend that the defendants violated Tennessee Code Annotated section 55–3–120(c) in that the defendant Patterson swore falsely and made false and misleading statements, thereby violating the Tennessee Consumer Protection Act.

As pointed out by the defendants, these issues were not raised at trial and there is no evidence in the record regarding this contention. The plaintiffs have therefore waived this argument.

The defendants contend that the sale of the automobile was lawful, valid, useful, and without defect in the State of Tennessee and that the sale was in Tennessee and that it therefore does not become unlawful, invalid, useless, or defective in Tennessee if the purchaser takes a product to another state where it may be considered unlawful, invalid, useless, or defective.

■ We are of the opinion that a seller in Tennessee does not have a higher duty in the course of his business to a non-resident purchaser than to a resident purchaser. We know of no duty on the part of a seller to know the law of the state of the residence of the purchaser of a product or requires the seller to inform the purchaser of the law.

Plaintiff's second issue is: "The trial court erred in failing to hold that the defendants' misrepresentations regarding whether the car had incurred real 'flood damage' and the defendants' failure to inform the plaintiffs the automobile had previously been issued a 'salvage-unrebuildable' Florida title constitut-

ed breach of contract and breach of warranty." The plaintiffs founded their lawsuit, in part, on fraud and misrepresentation. The trial court chose to credit the defendants' testimony in finding that the plaintiffs failed to carry their burden of proof regarding fraud and misrepresentation.

■ The trial court credited the testimony of the defendants on this issue. If the court had not credited the defendants' testimony that they had disclosed water damage to plaintiffs, then the judgment of the trial court would necessarily have been different in finding that there was fraud and misrepresentation.

■ The trial judge saw the witnesses and heard the evidence and arrived at evaluation of the witnesses. It was for the trial judge to pass upon the credibility of the witnesses and the weight to be given their testimony after considering not only the opinion of the witnesses, but also, the witnesses' qualifications to express opinions and the facts upon which they were based. *State v. Chumbley,* 27 Tenn.App. 377, 181 S.W.2d 382, 385 (1944).

■ The automobile in this case was sold "as is." While this language would not defeat an action under the Tennessee Consumer Protection Act, it may allow a seller to limit, modify or disclaim all implied warranties and actions. *Morris v. Mack's Used Cars,* 824 S.W.2d 538 (Tenn.1992).

Thus the fraud and misrepresentation issue is without merit.

Plaintiffs' third issue is: "The trial court erred in failing to hold that the defendants' misrepresentation regarding whether the car had incurred real 'flood damage' and the defendants' failure to inform the plaintiffs the automobile had previously been issued a 'salvage-unrebuildable' Florida title, constituted a negligent misrepresentation."

■ Plaintiffs inspected the automobile. The Buyers' Guide informed plaintiffs that the automobile had suffered flood damage. The Certificate of Title issued by the State of Tennessee informed the plaintiffs that the vehicle was water damaged, in compliance with Tennessee Code Annotated section 55–3–210. The plaintiffs had information before

them, prior to their purchase, that the Town Car had been damaged due to water and, nevertheless, they chose to purchase the automobile. There is no evidence in this record that the defendants had superior knowledge of the extent of the water damage. Thus, this issue too is without merit.

■ The plaintiffs' fourth issue is: "The trial court erred in failing to hold that the defendants' misrepresentations regarding whether the car had incurred real 'flood damage' and the defendants' failure to inform the plaintiffs the automobile had previously been issued a 'salvage-unrebuildable' Florida title constituted fraud."

In order to sustain a cause of action for fraudulent misrepresentation, the plaintiff must show that: 1) the defendant made a representation of an existing or past facts; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact, and 6) plaintiff suffered damages as a result of the misrepresentation.

*Metro. Gov't of Nashville, Davidson Co. v. McKinney,* 852 S.W.2d 233, 237 (Tenn.App. 1992).

■ Plaintiffs testified that defendant Patterson told him the water had only been up to the wheels of the automobile. Defendant Patterson denied making this statement. The trial court, in finding there was no misrepresentation, credited the testimony of defendant Patterson and found that the plaintiffs had been informed of the water damage. We are unable to find that there has been false representation in this case. There is nothing to show that the evidence preponderates against the trial court's finding that there was not a misrepresentation.

Thus, the plaintiff's fourth issue is too without merit.

The judgment of the trial court is affirmed in all respects, and the cause is remanded to the trial court for further necessary proceed-

ings. Costs on appeal are taxed to the plaintiffs/appellants.

TODD, P.J., M.S., and CANTRELL, J., concur.