# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

BARRY SHAWN RALSTON      )
           )
      Plaintiff/Appellant,     )
           )
v.           )
           )
GINA IONE HOLLOWAY      )
RALSTON           )
      Defendant/Appellee.    )
           )

Appeal No.
01A01-9804-CV-00222

Davidson Circuit

No. 96D-2621

**FILED**

August 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT
FOR DAVIDSON COUNTY

THE HONORABLE MURIEL ROBINSON PRESIDING

ROBERT L. JACKSON
W. SCOTT ROSENBERG
214 2nd AVENUE, NORTH/SUITE 103
NASHVILLE, TENNESSEE 37201

ATTORNEYS FOR PLAINTIFF/APPELLANT

ROSEMARY E. PHILLIPS
429 CHURCH STREET
P.O. BOX 590
GOODLETTSVILLE, TENNESSEE 37070-0590

ATTORNEY FOR DEFENDANT/APPELLEE

**VACATED AND REMANDED**

PATRICIA J. COTTRELL

CONCUR:

CANTRELL, J.
KOCH, J.

# OPINION

This appeal arose after the trial court rejected Appellant Barry Shawn Ralston's ("the father") petition to reduce child support on the basis of his reduced actual income. In his sole issue on appeal, the father argues that the trial court misapplied Tenn. Code Ann. § 36-5-101 (a)(1), which he claims mandated the modification of child support on a showing of a significant variance between the amount of child support required by application of the Child Support Guidelines to his current actual income and the previously-ordered support obligation. Appellee Gina Ione Holloway Ralston ("the mother") responds that the father remains intentionally underemployed and that the trial court properly considered the father's potential income in denying the requested reduction. For the reasons set out herein, we vacate and remand for further proceedings.

When the parties divorced in April 1997, they stipulated to the grounds. At the time, they had two minor children. The final decree of divorce, which reflected the parties' settlement agreement, awarded the mother primary physical custody of the children and ordered the father, *inter alia*, to pay monthly child support in the amount of $1,540, which, according to the decree, was in accordance with the Child Support Guidelines.

In August 1997, the father filed a Petition to reduce child support, alleging that he had lost his job earning over $82,000 as a director of sales and marketing and was presently earning a yearly salary of $35,000. The mother filed motions seeking payment of his child support arrearage and for attorney fees incurred in bringing that motion. After an August hearing, the trial court ordered the father to pay the child support arrearage and $250 in attorney fees.

In December 1997, the mother filed an Answer and Counter-petition seeking contempt sanctions for the father's purported failure to pay child support in November or December. This matter and the father's request for modification of the child support were heard in February 1998. At the hearing, the father testified that his job was eliminated after his company downsized due to a Chapter 11 proceeding. He then formed a partnership, Primary Care Consultants, Ltd., with his brother, a general contractor. The father testified that he had borrowed money from his family to pay the child support arrearage.

After the hearing concluded, the court denied the father's request for modification of the child support. It found that the father had been in arrears on his child support in the amount of $3,850, but had paid that sum current on the date of the hearing. The hearing on the petition was not transcribed, and the case is before this court on a Statement of the Evidence as contemplated by Tenn. R. App. P. 24 (c).

I.

The sole issue on appeal is whether the trial court correctly applied the standard for modification of a prior support order. The proper standard for determining whether an existing child support order should be modified is the "significant variance test" which the General Assembly adopted in 1994. *Turner v. Turner,* 919 S.W.2d 340, 342-343 (Tenn. App. 1995). This legislation provides that:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101 (a) (1) (Supp. 1998). Under the guidelines, the

-3-

amount of support is formulaic, unless special circumstances are found, and is based on a flat percentage of the obligor's net income. Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2)(1994). The party seeking the modification bears the burden of showing the necessary significant variance. *See Seal v. Seal,* 802 S.W.2d 617, 620 (Tenn. App. 1990); *Turner*, 919 S.W.2d at 345.

A significant variance between the guideline amount and the current support order is defined as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month", and "[s]uch variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3)(1994)

The significant variance test requires that the court first determine the obligor's income to which the guidelines' formula will be applied.

> Determining the amount of the non-custodial parent's income is the most important element of proof in a proceeding to set child support [citations omitted.] This is the case when setting initial support and when considering requests for modification of an existing support obligation. The non-custodial parent's income is, in fact, doubly important in a modification proceeding because the child support guidelines require the courts to examine the basis for the current support order and the non-custodial parent's current income.

*Turner*, 919 S.W.2d at 344.

In this case, the father sought reduction of his support obligation on the basis of his reduced actual earnings. However, courts may use the obligor parent's potential, rather than actual, income where that parent is willfully and voluntarily unemployed or underemployed.

> If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based upon a determination of potential income, as evidenced by educational level and/or previous work experience.

-4-

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d)(1994).

In other words, where a lower income is due to willful[1] and voluntary unemployment or underemployment, the courts must determine the potential income of the obligor parent, instead of using the actual income, before a determination of the amount due under the guidelines can be made.

## II.

The issue of willful and voluntary underemployment can arise in the initial setting of child support as well as in modification proceedings. It can arise where the obligee parent seeks an upward modification, as well as where the obligor spouse seeks a reduction. The determination of whether a particular parent is willfully and voluntarily unemployed or underemployed is fact-dependent, and can only be made after consideration of all the circumstances surrounding that parent's past and present employment or business activities.

Our courts will consider the reasonableness of the obligor parent's occupational choices in light of surrounding circumstances. *See Narus v. Narus*, No. 03A01-9804-CV-00126, 1998 WL 959839 at *2 (Tenn. App. Dec. 31, 1998) (no Tenn. R. App. P. 11 application filed) (obligor not willfully and voluntarily unemployed or underemployed where obligor chose "to retire at a reasonable age, for legitimate reasons, and otherwise under reasonable circumstances."). The trial court must consider whether the choice to take a lower paying job is made

---

[1] The word "willfully", as used in the guidelines, does not mean that the obligor must have intended to reduce or avoid his or her child support obligation through unemployment or underemployment. There is no requirement that there exist evidence of the obligor parent's intent to avoid support obligations in order to substitute potential income for actual income. *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 747 (Tenn. App. 1996); *Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947 at *4 (Tenn. App. Feb. 6, 1998) (no Tenn.R.App.P. 11 application filed) (citing *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258 at *8 (Tenn. App. Oct. 3, 1996) (no Tenn.R.App.P. 11 application filed)).

in good faith and whether some or all of the unrealized earning capacity should be included as imputed income.

However, obligor parents will not be allowed to avoid or lessen their obligations to their children simply so that the parents can choose not to work or to work at lower-paying jobs. *See Garfinkle v. Garfinkle*, 945 S.W.2d 744, 744 (Tenn. App. 1996) (rejecting the Masters-degreed obligor's argument that his actual income from his management of his rental properties should be used to compute child support because he had a fundamental right to choose to be self-employed and because he had been so self-employed prior to and during his marriage). The reason for the obligor parent's decision to take a lower paying job or reduce income-producing activities is relevant. In *McGaffic v. McGaffic*, No. 03A01-9707-CV-00286, 1997 WL 772899 (Tenn. App. Dec. 9, 1997) (no Tenn. R. App. P. 11 application filed), the prior work history of the father as well as testimony at the hearing supported the trial court's finding that the father was underemployed because he took a lower-paying job where his employer allowed him to be off from work to pursue his hobby of drag racing. However, in *Creson v. Creson,* No. 02A01-9801-CH-00002, 1999 WL 65055 at * 5 (Tenn. App. Feb. 12, 1999) (no Tenn. R. App. P. 11 application filed), this court determined that an obligor's decision to reduce the number of clients he serviced in his lawn care business did not constitute willful underemployment in view of his other full time employment. Additionally, an obligor's testimony that he was capable of earning a greater income[2] has been found to constitute evidence of willful unemployment

_____

[2] A finding that an obligor has the potential or capability to produce greater income has been treated as the functional equivalent of, or an implicit finding of, willful and voluntary unemployment or underemployment. *See Anderson,* 1998 WL 44947; *Beem v. Beem,* No. 02A01-9511-CV-00252, 1996 WL 636491 (Tenn. App. Nov. 5, 1996) (no Tenn.R.App.P. 11 application filed)*; Riley v. Riley,* No. 03A01-9480-CH-00268, 1995 WL 311331 (Tenn. App. May 22,

or underemployment. *See Gutknecht v. Gutknecht*, No. 01-A-01-9101-CH-00015, 1991 WL 79560 at * 1 (Tenn. App. May 17, 1991) (no Tenn. R. App. P. 11 application filed).

Generally, where a reduced actual income is involved, the fact patterns differ on whether the leaving of previous employment or other income producing activity was <u>voluntary</u>, *see, e.g., Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258 (Tenn. App. Oct. 3, 1996) (no Tenn. R. App. P. 11 application filed) (finding 35-year old obligor who chose to discontinue working was underemployed); *Riley v. Riley*, No. 03A01-9480-CH-00268, 1995 WL 311331 (Tenn. App. May 22, 1995) (no Tenn. R. App. P. 11 application filed) (affirming implicit finding of underemployment where college-degreed obligor voluntarily left his employment with county school board to try to earn a living farming); *Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999) (obligor who sold successful business and began cattle breeding operation was underemployed), or <u>involuntary</u>, *see, e.g., Beem v. Beem*, No. 02A01-9511-CV-00252, 1996 WL 636491 (Tenn. App. Nov. 5, 1996) (no Tenn. R. App. P. 11 application filed) (reversing implicit finding of underemployment where obligor's job was eliminated prior to parties entering into MDA); *Marcus v. Marcus*, No. 02A01-9611-CV-000286, 1998 WL 29645 (Tenn. App. Jan. 28, 1998) (no Tenn. R. App. P. 11 application filed) (no finding of underemployment where obligor's employment was terminated).

Where a parent with child support obligations voluntarily leaves the employment or business activity which provided the resources to maintain that support and chooses to cease working or to begin an activity which provides

_____

1995) (no Tenn.R.App.P. 11 application filed).

significantly less income, the courts are more inclined to find willful and voluntary unemployment or underemployment. *See Brooks v. Brooks,* 992 S.W.2d at 407; *Ford v. Ford,* 1996 WL 560258 at 3.

The fact that an obligor parent's loss of former employment was not voluntary does not, however, end the inquiry as to whether that parent is willfully and voluntarily underemployed. The term "willfully and voluntarily" implies a choice. While the initial loss of employment may have been involuntary, an obligor's course of action and decision-making after termination can demonstrate willful and voluntary underemployment.

Three cases are particularly relevant here because they involve obligors who lost or left lucrative positions and then began their own businesses. In *Beem v. Beem*, 1996 WL 636491, the Court of Appeals found there was no evidence in the record that the obligor spouse was willfully and voluntarily underemployed.[3] In that case, the obligor's $55,000 per year job was eliminated, and he started his own consulting business which, at the time of the hearing, was providing him with $2970 per month income. The obligor testified he anticipated that income to increase to $3500 per month for the rest of the year. The record indicated that the obligor had, in addition to starting his own business, sought employment from various companies and had provided his resume to a number of employment search firms. He also actively solicited business for his new company.

In *Marcus v. Marcus*, 1998 WL 29645, this Court found that the record did not contain evidence that would support a finding that the obligor parent was willfully and voluntarily underemployed and, consequently, reversed the trial

---

[3] The parties executed a marital dissolution agreement which recognized husband's unemployment, and the appeal involved the initial setting of the child support obligation as part of the final divorce order.

court's setting of child support on the basis of the parent's earning potential. In *Marcus*, the Father's vice president position was eliminated. After searching for employment, he formed his own Internet business approximately two years before the divorce hearing.

In *Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947 (Tenn. App. Feb. 6, 1998) (no Tenn. R. App. P. 11 application filed), the obligor father, after notice that his employer, the Tennessee Valley Authority, planned to reduce its workforce significantly in his department, accepted an advantageous early-out offer, and ended his employment. Rather than looking for a comparable position with another entity, the obligor decided to start his own computer business, which was not, at the time of the hearing, financially successful. The obligor testified he eventually intended to seek outside employment if his business did not become profitable within the next year. Based upon evidence that Mr. Anderson had been earning more than $50,000 when he left TVA, that he could have earned at least $40,000 if he had found a position with another employer, and could possibly have earned more than he was making at TVA, the court found his self-employment, which he claimed produced only $12,000 in income, constituted willful underemployment.

Both *Marcus* and *Beem* involve situations where a formerly-held position was eliminated and the obligor subsequently started his own business which produced considerably less income than the previous employment. The records in both cases, however, included evidence of efforts by the obligor to find other employment before, or in addition to, the obligor's decision to start his own business. In *Anderson*, on the other hand, the obligor's job was not actually abolished and, rather than look for employment at a comparable salary, the

obligor elected to start his own company. Thus, the obligor's efforts to replace the lost salary can be determinative of the issue of voluntary underemployment.

This review of prior decisions is intended primarily to demonstrate that the determination of whether an obligor parent is willfully and voluntarily underemployed is one which is dependent upon the complete factual background of the obligor's situation. We believe this is especially true where the initial loss of employment was not due to the obligor parent's decision to voluntarily terminate his or her employment. In such situations, the obligor parent's attempts to find employment at a comparable salary, the availability of comparable or any employment, and the reasonableness of the employment choice under all the circumstances, including the support obligation, should be considered.[4]

III.

If the evidence demonstrates that the obligor parent seeking the modification is willfully and voluntarily unemployed or underemployed, then the court is required to use that parent's potential income, rather than actual income, in setting the child support obligation. Thus, the court's next task is to determine the potential income, taking into consideration the obligor's educational level and/or previous work experience. *See Garfinkle,* 945 S.W.2d at 747. In some cases, the underemployed parent's statements about his earning potential have also served as the measure of potential income. *See, e.g. Gutknecht,* 1991 WL

---

[4] In his dissent in *Brooks*, 992 S.W.2d at 409, Justice Birch suggests that "the following additional factors would be helpful to trial courts who must decide whether a parent is willfully and voluntarily underemployed: (1) the prevailing wage rates in the local area for various occupations; (2) the special skills and training possessed by the parent; (3) the availability of employment for which the parent is qualified; (4) whether the underemployment represents a bona fide career change that outweighs the adverse effect of the diminished income; and (5) whether a parent's underemployment is temporary and will ultimately lead to an increase in income."

79560 (unemployed obligor conceded he was capable of earning about $25,000 annually, a figure comparable to his earlier salaries, and court used that figure as potential income).

Our courts have in some cases determined that the previous income of the obligor is an accurate measure of potential income. This approach is most applicable when an obligor parent has voluntarily discontinued his prior employment or other income-producing activity, because, without the conscious decision to cease the activity, the actual income would have continued. In *Brooks,* our Supreme Court recently examined the potential income of a father who was found to be underemployed. *Brooks,* 992 S.W.2d at 407. The father in that case had sold a successful retail business to undertake cattle farming. The Court found, "the earnings he derived from the Conoco store were the best evidence of his earning capacity at or near the time the petition for an increase in support was filed. One year prior to the hearing, the store generated profits of $102,087. . . . Accordingly, we impute Mr. Brooks' income for child support purposes at the time of the hearing to be $102,087." *Brooks,* 992 S.W.2d at 407.

Where there is an explicit finding, supported by evidence in the record, that an obligor parent is willfully unemployed or underemployed, or a similarly supported finding that the obligor's earning capacity is greater than the current income, the appellate courts have sometimes affirmed a trial court's decision to deny a requested reduction, resulting in the conclusion that the obligor's potential income is the same as his or her prior income. *Anderson,* 1998 WL 44947; *Seaton v. Reynolds,* No. 02A01-9810-JV-00290, 1999 WL 20790 (Tenn. App. Jan. 20, 1999) (no Tenn. App. P. 11 application filed).

In that situation, a trial court's decision to deny a request to reduce child

support has been determined to include an implicit, if not express, finding that the obligor's potential income has not decreased from the amount he or she was actually earning at the time of the last order setting the amount of support. *See Anderson*, 1998 WL 44947; *see also Riley*, 1995 WL 311331.

In *Ford*, 1996 WL 560258, this court remanded the case to the trial court for a determination of the husband's potential income, specifically directing the court to consider his previous work experience (he earned $650 per week prior to his decision to discontinue working) and his educational background. The trial court had found husband not willfully underemployed and, consequently, made no finding regarding his potential income.

In *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. App. 1996), this Court found that the trial court was required to make an express determination of the obligor's potential earnings before it could set the amount of child support and remanded for such purpose.[5] *Herrera,* 944 S.W.2d at 387. While this holding was made in the context of an initial award of child support as part of the final divorce order, we think it has application where, as here, the obligor involuntarily loses his employment. The obligor's ability find employment at a comparable salary, or at any salary, is a relevant factual inquiry. The court must determine whether some or all of the unrealized earning capacity should be included as imputed income.

IV.

_____

[5] In *Herrera*, it was undisputed that the father's income from his medical practice had significantly decreased, because, at least in part, of a reduction in referrals and Medicare reimbursements. The trial court stated it was setting child support based on the "true income capability" of the father, taking into consideration the factors which may have contributed to the decrease in his income, but it made no express determination of that potential income or explanation of the specific basis for its decision. *See id.* at 387.

The father asserts that the trial court's failure to make an explicit finding that he was willfully and voluntarily underemployed precludes the court from using any amount other than his actual income in determining whether a substantial variance exists.[6] Where a trial court finds that a child support obligor is willfully and voluntarily underemployed, this Court will review that finding with a presumption of correctness and will not overturn that finding unless the evidence preponderates against it. *Marcus*, 1998 WL 29645 at * 1. Where, however, the trial court does not make a specific finding of willful and voluntary underemployment,[7] this Court may review the record and determine that issue itself, with no presumption of correctness. *Brooks*, 992 S.W.2d at 404.

Ordinarily, our review of a trial court's decision is *de novo* with a presumption that its findings of fact are correct. Tenn. R. App. P. 13 (d). Where, however, the trial court makes no findings of fact, there is nothing in the record to which the presumption can attach, and our review is *de novo* without a presumption of correctness. *See Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. App. 1984).

_____

[6] The father also argues that Tenn. Code Ann. § 36-5-101(e)(1) would require the trial court to make a written finding that "the application of the Child Support Guidelines would be unjust or inappropriate" in this case before the court can substitute potential income for actual income due to willful and voluntary underemployment. That statute, however, is applicable only to the situation where a court determines that sufficient evidence exists to rebut the presumption that the Child Support Guidelines are determinative of the amount of support. Because the willful underemployment situation involves identification of the amount of income to which the guidelines are to be applied, the statute propounded by the father is simply not relevant to this situation.

[7] A trial court may be found to have made an implicit finding of underemployment on the basis of that court's ultimate decision. *Hyden v. Hyden*, No. 02A01-9611-CH-00273, 1997 WL 593800 at * 3 (Tenn. App. September 25, 1997 (no Tenn.R.App.P. 11 application filed). In any event, this court must review the record, and where the record is insufficient, the standard applied in the review is irrelevant.

The Order in this matter makes no finding that the father is willfully and voluntarily underemployed or that the father has the potential or capacity to earn a greater income. Similarly, there is no finding as to the court's basis for determining the father's potential income. The Statement of the Evidence prepared by the trial court includes the observation that, "salaries were set by he [the father] and his partner knowing his obligation and support under the final decree."[8] Similarly, the trial court's refusal to reduce the support obligation indicates that the court was of the opinion that the father's potential income was at least the amount the guidelines indicate would be needed for the child support set herein, $82,200.

Here, the record shows that the father had a high school education and two years of college. When his monthly child support payment of $1550 was initially calculated, he was earning a yearly salary of $82,500. At the time of the modification hearing, it is undisputed that the father's actual income was reduced to approximately $35,000.

The trial court herein may have relied upon the reasoning in cases such as *Seaton*, 1999 WL 20790, wherein the lack of evidence in the record demonstrating the involuntary loss of income and attempts to find comparable or

---

[8]This comment could reflect the trial court's concern regarding whether the father's new job changed his status to that of a self-employed obligor within the meaning of Tenn. Comp. R. & Regs. ch. 1240-2-4-.03 (4) (1994). This would alter the method of calculating his income for child support purposes and could raise the issue of "whether the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income." *Beem v. Beem,* 1996 WL 6364491 at *4. Both parties briefed the issue of underemployment, not underpayment, and in any event, the evidence in the record is insufficient to permit review of this issue.

-14-

other employment were found to constitute a failure of the obligor parent to carry the burden of proving that a downward modification of support was warranted. In *Seaton*, the obligor parent's contract as instructor with a university was not renewed, but no evidence of the reason for non-renewal appeared in the record, and the obligor enrolled in a doctoral program and sought reduction in child support.

In this case, however, it is undisputed that Mr. Ralston's loss of employment was involuntary. Consequently, we think this court's approach in *Hall v. Polk*, No. 01-A-01-9106-CV-00232, 1991 WL 226914 (Tenn. App. Nov. 6, 1991) (no Tenn. R. App. P. 11 application filed), is more applicable. In *Hall*, this court determined that the obligor parent made a *prima facie* case in his petition to reduce child support by proving that his former employment was terminated because his employer company closed. "There is no showing that he is voluntarily underemployed or that the unfortunate circumstances he now finds himself in were of his own making." *Hall*, 1991 WL 226914 at * 1. This court reversed and remanded for a new hearing on the modification request. *Id.*

In this appeal, the mother argues that the trial court's statement that the father's salary was set by the father and his brother was a specific finding that the father made a voluntary decision to enter into a business relationship that would not allow him to comply with his child support obligations. The mother does not contend that the father's loss of his previous job was voluntary. Rather, she argues that his decision to start a new business with his brother, when he lacked the assets to do so, was willful and voluntary underemployment in view of his skills and prior work experience. She maintains he did not seek other employment in his field. She also argues that his prior salary, $82,500, is the best

evidence of his potential earnings.

On the other hand, the father argues that he sought to remedy his unemployment by using his skills and experience to open his own company with his brother who was supplying the initial funding. The father does not allege that he sought other employment before entering into the partnership with his brother. To the contrary, in his brief he states that he "immediately" took steps to remedy his unemployment by starting his own company.

Despite these arguments in the briefs, the record simply contains no evidence regarding the father's effort, or lack thereof, to find employment at a salary which would allow him to meet his support obligations, or to find any other employment. The record also contains no information regarding available positions and salaries in his field. If the father made a voluntary choice to start a business where his salary is set at less than half of his previous income without exploring the possibility of employment at a higher salary, such action could, as the mother asserts, demonstrate willful underemployment in disregard of his support obligations. Without such evidence, we are unable to make a finding regarding his underemployment.

Even if this Court were able to sustain an implicit finding that the father was willfully and voluntarily underemployed, the issue of his potential earnings is even more problematic. An obligor's potential income is a question of fact which this court is unable to review absent sufficient evidence in the record. *Renick v. Renick*, No. 01-A-01-9007-CV-00263, 1991 WL 99514 at * 6 (Tenn. App. June 12, 1991) (permission to appeal denied Nov. 4, 1991).

Because the father's job loss was not a result of a voluntary action or conscious decision on his part, we are unwilling to assume that the father could

have gotten another job making $82,500 or to assume the opposite. Similarly, we are unable to conclude that he could not have gotten a job in the open market which paid significantly more than $35,000. The record, such as it is, provides no basis for our independent determination of what the father's potential income might be.

Thus, the record prevents us from conducting an independent review to ascertain the propriety of the trial court's decision to reject the father's request for modification of child support. Accordingly, this case must be remanded for further fact finding. *See Herrera*, 944 S.W.2d at 394; *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. App. 1995).

Because these determinations are very fact-specific, it is incumbent upon the parties to present to the trial court the full factual background of a particular situation. We agree that "the judicial system should look with the gravest disfavor upon parents who through their fault or design become underemployed in an effort to evade their legal, natural obligation to support their children." *Anderson v. Anderson*, No. 01A01-9603-CV-0018, 1996 WL 465242 at * 1 (Aug. 16, 1996) (no Tenn. R. App. P. 11 application filed). However, we are simply unable, on the basis of the record before us, to draw such conclusions.

This case is remanded for further proceedings consistent with this opinion. Pending such further proceedings the amount of child support shall

remain unmodified.  Costs of this appeal are taxed equally to Appellant and

Appellee, for which execution may issue if necessary.


                              _____

                              PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____

BEN H. CANTRELL, PRESIDING JUDGE (M.S.)


_____

WILLIAM C. KOCH JR., JUDGE

-18-