# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 20, 2012 Session

## LATIF ABDULSAYED ET AL. v. RANDAL HAND ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11C927     Amanda McClendon, Judge**

_____

**No. M2012-00583-COA-R3-CV - Filed November 14, 2012**

_____

This appeal arises from two very unorthodox contracts by which Buyers purchased a retail convenience market, the equipment and inventory of the market, and the underlying real estate. Within four months of the purchase, Buyers commenced this action seeking rescission of the contracts on the basis of Sellers' breach of contract, fraud, and misrepresentation. Sellers prevailed on all issues in the trial court and recovered the business and real estate. The trial court also ruled that Sellers were entitled to keep the $190,000 down payment on the real estate. On appeal, Buyers raise several issues, *inter alia*, they contend the trial court erred in finding they did not prove fraudulent inducement or intentional misrepresentation, that the court erred in finding that Buyers breached the contract, and that the trial court erred in awarding Sellers the $190,000 down payment as damages for Buyers' breach of the contract when Sellers did not plead damages in their counter-complaint. We have determined the evidence preponderates against the trial court's finding that Sellers did not make intentional misrepresentations, and that, to the contrary, the preponderance of the evidence established that Sellers made intentional misrepresentations for which Buyers are entitled to a rescission of the contracts and return of their $190,000 down payment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Kristin Fecteau, Nashville, Tennessee, for the appellants, Latif Abdulsayed and Afaf Hanna.

Joseph T. Zanger, White House, Tennessee, for the appellees, Randal Hand and Linda Hand.

**OPINION**

In November 2010, Latif Abdelsayed[1] and his wife, Afaf Hanna ("Buyers"), approached Randal and Linda Hand ("Sellers") about purchasing Sellers' business, Baker's Market, in Goodlettsville, Tennessee and the underlying real estate which Sellers also owned. In late November, the parties entered into a so-called "Precontract" pursuant to which Buyers could observe the operation of the market and determine if the sales of the market met certain thresholds as represented by Sellers: $18,000 for food section sales and $44,000 for market sales not including gas or sales to vendors. The Precontract further provided that Sellers would help Buyers during the first month with all information regarding business sales, and if the business sales did not reach $18,000 for food section sales and $44,000 for market sales, then Buyers had the right to cancel the contract and receive a refund of their $10,000 down payment. Buyers paid the $10,000 down payment to Sellers in late November 2010. Thereafter, Buyers' son appeared daily to observe Sellers' operation of the convenience market as the Precontract contemplated.

On December 20, 2010, the parties entered into a Contract for Sale and Purchase of the real property, land, and improvements, where the market was located (the "Real Estate Contract"). The purchase price for the land and improvements at 1604 Springfield Highway was $700,000. A down payment of $220,000 was required and Buyers were required to make payments of $8,000 for the first eight months of the contract period with payments thereafter of $3,952.72 per month in accordance with a Loan Amortization Schedule, which was attached to the contract. The Real Estate Contract further provided that Sellers represented and warranted that they had clean and clear title to the property and could convey such to Buyers. The Contract stated that a Warranty Deed was attached, however, no deed was attached. Further, the portion of the Real Estate Contract that stated the Record Book and Page number where the deed was recorded were blank.

Buyers had originally planned on obtaining a loan for the purchase, however, they were refused a bank loan because Sellers' sales tax returns were unacceptable to the bank. Because Buyers could not obtain a loan to purchase the real estate, Sellers agreed to finance the purchase of the real estate pursuant to a contract for deed.

---

[1]At trial, plaintiffs' attorney advised the court that the correct spelling of Latif Abdelsayed is "Abdelsayed." The court advised Mr. Abdelsayed's attorney to correct the incorrect spelling in the final order, however, this did not occur. While the style of this action shall remain "Abdulsayed," we shall use the appropriate spelling of Mr. Abdelsayed's name in the body of this opinion.

Buyers paid $190,000 of the $220,000 down payment;[2] the balance, $30,000, was to be provided by their translator during the transaction; however, the check provided by the translator was returned for insufficient funds and no further down payment was remitted.

Although the full amount of the down payment had not been remitted, on January 1, 2011, Buyers assumed full control of the market. Soon thereafter, Buyers contacted an attorney based on concerns the market was not producing sales as represented in the Precontract. Upon inquiry, Buyers' attorney soon discovered that the real estate was encumbered by a Deed of Trust in favor of First State Bank in the amount of $225,000. The property was further encumbered by another Deed of Trust in favor of the previous owners in the amount of an $223,839.81, and there was a duly recorded secured interest in twenty-five pieces of equipment at the Market.[3]

Upon discovery of these facts, Buyers stopped making the monthly payments as required under the contract and filed this action on March 8, 2011, alleging breach of contract, fraud, and misrepresentation. Sellers answered denying all allegations and Sellers asserted an affirmative defense that Buyers were in breach of contract, and requested that possession of the business and real property be immediately returned to Sellers. On April 6, 2011, Sellers filed a second answer and counter-complaint, in which they asserted a claim for breach of contract. Sellers did not plead any damages. Sellers also filed an Application for Injunctive Relief seeking a temporary injunction to allow Sellers to resume operation of the business. The application was supported by the affidavit of Seller Randal Hand, who claimed the business was suffering under the operation of Buyers. A hearing occurred on the temporary injunction, following which the trial court granted the temporary injunction and Sellers were awarded immediate possession of the premises and the right to operate the business by order entered on April 21, 2011.

The breach of contract, fraud, and misrepresentation claims were tried without a jury on December 13, 2011. The trial court issued its ruling from the bench finding that Buyers failed to meet their burden of proof on their claims of breach of contract, misrepresentation, and fraud. The trial court found that Buyers had breached the contract and issued a permanent injunction restoring the business and real property to Sellers. Following a hearing on January 19, 2012, on Buyers' claim for the return of the down payment of $190,000, the

---

[2]From the record, it appears that Buyers took out a loan against a home that they owned to obtain the majority of the down payment.

[3]A UCC fixture filing revealed that the freezers, the walk-in coolers, the kerosene pump, and numerous other pieces of equipment at the store were collateralizing the Sellers' debt on the property.

trial court referenced its previous ruling from the bench and denied Buyers' request to recover the down payment. Buyers appeal.

## ANALYSIS

Buyers present several issues on appeal. Buyers contend the trial court erred in finding they had not proven fraudulent inducement and intentional misrepresentation. They contend the trial court erred in finding that Buyers breached the contract and awarding the $190,000 down payment to Sellers for the breach when the Sellers did not plead damages in their counter-suit, resulting in an unlawful forfeiture or penalty on Buyers. Buyers also contend the trial court erred in granting the injunction issued on April 21, 2011, which granted Sellers the right to immediate possession of the real property and the right to operate the business. We shall address each issue in turn.

## I. INTENTIONAL MISREPRESENTATION

Buyers contend that Sellers fraudulently induced them to enter into the Real Estate Contract by making several fraudulent misrepresentations and by engaging in fraud. First, Buyers contend Sellers fraudulently misrepresented that they owned the property and business free and clear of any liens and encumbrances. Second, Buyers contend Sellers misrepresented the amount of profit that the market produced.

The trial court found that Buyers failed to prove their claims of fraudulent inducement and misrepresentation. The trial court announced its ruling from the bench stating there was no proof of intentional misrepresentation. The trial court, however, found there was proof that Sellers misrepresented having title free and clear but concluded it was a negligent misrepresentation and not a purposeful misrepresentation and it was not material to the contract. We respectfully disagree with these two conclusions.

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr.,*

*Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

In order to sustain a cause of action for fraudulent misrepresentation or intentional misrepresentation,[4] the plaintiff must show that: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damages as a result of the misrepresentation. *Devorak v. Patterson*, 907 S.W.2d 815, 819 (Tenn. Ct. App. 1995) (quoting *Metro. Gov't of Nashville, Davidson Cty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).

Buyers contend the Sellers intentionally misrepresented that they owned the property free and clear of encumbrances, mortgages, or liens. Paragraph I of the Contract for Sale and Purchase entitled "Seller Warranties" states:

> The Sellers hereby represent and warrant that they have clean and clear title to the property and can convey such to the Buyer. The Buyer agrees that all right and title to the property shall remain in the name of the Sellers until such time as the loan is satisfied. The contract agreement covers land and real property described in the Warranty Deed attached hereto as Exhibit B and on file with the Davidson County Register of Deeds in Record Book xxx, Page xxx.[5] Attached is a listing of all equipment that will stay with the store. It shall be the responsibility of Buyers to maintain all items on said list and keep them intact until such time as this Contract is fully satisfied and the Buyer has taken full possession and ownership.

The trial court correctly found that Sellers had misrepresented that they owned the property and business free and clear of any encumbrances. The trial court found, however, that this did not amount to a "fraudulent misrepresentation." We respectfully disagree. The Contract expressly states that Sellers "represent and warrant that they have clean and clear

---

[4]We note that in our Supreme Court's recent opinion in *Hodge v. Craig*, the court noted that "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are different names for the same cause of action. *Hodge v. Craig*, – S.W.3d –, No. M2009-00930-SC-R11-CV, 2012 WL 4486315, at *12 (Tenn. Oct. 1, 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)). The court suggested that in order to avoid confusion, "the term ["intentional misrepresentation"] should be used exclusively henceforth." *Id*. Thus, we use the term intentional misrepresentation in this opinion.

[5]This is how it appears in the contract, "xxx."

title to the property." The proof at trial showed that they in fact did not; to the contrary, the property was encumbered by two Deeds of Trust in an aggregate amount exceeding $448,000, and the equipment referred to in Paragraph I was collateralizing the debt on the property as evidenced by UCC fixture filings introduced at trial. Further, Seller, Randal Hand, admitted that he was aware of the encumbrances on the property. Thus, Buyers proved the first two elements of an intentional misrepresentation claim. *See Devorak*, 907 S.W.2d at 819.

The third element Buyers must demonstrate is that the representation was in regard to a material fact. The trial court stated that whether or not Sellers had clear title was not material to the entire transaction. Again, we respectfully disagree principally because this was a contract deed which exposes buyers to significantly greater risks than the customary warranty deed and deed of trust.

A fact is material when "significant or essential to the issue or the matter at hand." *Black's Law Dictionary* 484 (7th ed. abridged 2000). Sellers testified that the property was only worth $345,000 when they purchased it in 2003 and yet the property was encumbered for more than $448,000 when the contract was entered into in 2010. Mr. Abdelsayed testified that he would not have invested his life savings in a business that was significantly encumbered and that is why the free and clear representation was material to the contract. Mr. Abdelsayed also testified that the encumbrance was material because had Sellers defaulted on any of the secured debts prior to his making full payment on the contract, he and his wife would have been left with nothing. Afaf Hanna testified that once the encumbrances were discovered she cried "day and night" because of the precarious financial situation resulting from entering into a contract on property that was burdened by debt. We find the evidence preponderates against the trial court's finding that whether or not Sellers had "free and clear title" to the property was not material to the sales contract.

The fourth element to establish is that Sellers made the representation knowingly or without belief in its truth or recklessly. As we previously noted, Seller Randal Hand admitted he was aware that he did not have "clean and clear title" to the property. Accordingly, Buyers established that Sellers made the representation knowing the statement was false.

The fifth element to be established is that Buyers reasonably relied upon the misrepresented material fact. The trial court found that Buyers had not proven this element based upon the conclusion that Buyers did not act in a "commercially reasonable" manner. We have determined the trial court's finding was based upon an erroneous legal standard. In a claim of intentional misrepresentation, reasonableness is determined based upon an evaluation of the factors set forth in *City State Bank v. Dean Witter Reynolds*, 948 S.W.2d 729, 737-38 (Tenn. Ct. App. 1996). Factors relevant to a determination of the reasonableness

of a plaintiff's reliance on a misrepresentation include the following: 1) the plaintiff's business expertise and sophistication; 2) the existence of longstanding business or personal relationships between the parties; 3) the availability of the relevant information; 4) the existence of a fiduciary relationship; 5) the concealment of the fraud; and 6) the opportunity to discover the fraud. *City State Bank*, 948 S.W.2d at 737. "Generally a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within its reach." *Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989).

The evidence presented at trial established that Buyers had no business expertise, that Mr. Abdelsayed worked as a fork lift operator at Tyson Foods, and that Buyers spoke little English. Sellers prepared the contract and although the contract stated the warranty deed was attached as an exhibit, it was not. Further, and significantly, the contract also purported to disclose the book and page numbers where the deed was recorded but the only information provided was that the deed was recorded in Book xxx at Page xxx. By concealing the book and page numbers, Sellers made the information less available, especially for a person with no business experience.

Of the factors relevant to a determination of reasonable reliance, we have determined that the second and fourth factors are not relevant because the parties did not have a longstanding business or personal relationship and there was no fiduciary relationship. Our assessment of the other factors is as follows.

The first factor, Buyers' lack of any business expertise and sophistication weighs heavily in Buyers' favor. The third factor, the availability of the relevant information, would typically weigh in Sellers' favor in this type of transaction; however, we have concluded that this factor does not favor either party due to Sellers' concealment of the book and page number of the deed, which made finding that information less available. The fifth factor, the concealment of the fraud, substantially favors Buyers. The sixth factor, the opportunity to discover the fraud weighs in favor of Sellers for, in spite of Sellers' acts of concealment, Buyers had the opportunity to discover the misrepresentation.

After considering all of the evidence in this record and the very unique circumstances of this case, we conclude that Buyers' reliance upon Sellers' misrepresentations was reasonable.

The sixth and final element to be established is that Buyers suffered damages as a result of the misrepresentation. Buyers established that they put their "life savings" into the purchase of the property, which was to be free and clear of debt; however, the property contracted to purchase had a net value that was $448,000 less than bargained for by the

parties. Further, unless the contract could be rescinded, Buyers had no recourse upon Sellers' default of any of the encumbrances.

Accordingly, Buyers proved all essential elements of their claim of intentional misrepresentation.

Intentional misrepresentation is a ground for rescission of a contract, *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991), and we have concluded that the facts of this case necessitate rescission of the contract, the return to Buyers of their $190,000 down payment, and restoring to Sellers all of their rights, title, and interests to the business and real estate.

## II. BREACH OF CONTRACT

As we have found that the Buyers established their cause of action for intentional misrepresentation resulting in rescission of the Contract, we reverse the trial court's finding that the Buyers breached the contract based upon refusal to pay. The intentional misrepresentations preceded the Buyers' failure to make payments under the contract.

## III. INJUNCTION

Buyers contend that the trial court erred in granting the injunction to Sellers because the Contract for Sale and Purchase did not provide that Sellers could retake the property within sixty days of non-payment, because the Sellers failed to show irreparable harm, and because the Sellers failed to post bond as required by Tennessee Rule of Civil Procedure 65.05. Having found that Buyers are entitled to rescission of the contract based upon the intentional misrepresentation of Sellers, we find this issue moot because, with rescission, Sellers shall have all of their pre-contract rights, title and interests in the business and real estate restored.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellees, Randal and Linda Hand.

_____
FRANK G. CLEMENT, JR., JUDGE

-8-