In the Matter of the Estate of ANDREW JACKSON LEWIS, Deceased. Claim of R. C. FULLER. —325 S. W. (2d) 647.

Western Section, at Jackson. December 31, 1958.

Certiorari denied by Supreme Court June 5, 1959.

Thomas F. Turley, Jr., Memphis, for appellant.

Henry M. Crymes, Memphis, for exceptors, Herbert Charles Lewis, Grace Respass, and Shirley Roaldson, appellees.

John T. Wilkinson, Jr., Memphis, Adm'r pendente lite and Adm'r C. T. A.

BEJACH, J. This cause involves a claim made by R. C. Fuller, who was nominated as executor in the will of Andrew Jackson Lewis, for reimbursement of attorney's fees and other expenses incurred by him, totalling the sum of $1,314.14. This claim was excepted to by Herbert Charles Lewis, the adopted son and only heir and distributee of the decedent, Andrew Jackson Lewis, and by Grace Respass and Shirley Roaldson, legatees under the will of Andrew Jackson Lewis, which was admitted to probate by order of the Probate Court entered July 24, 1957. The Probate Court of Shelby County sustained these exceptions and disallowed the claim of R. C. Fuller, who has appealed to this Court.

Before considering the appeal itself, we must first take up and dispose of a motion made by appellees, the exceptants, to strike the bill of exceptions and exhibits filed in the lower court, which are included in the physical record presented to this Court. The ground of said motion is that the bill of exceptions and exhibits thereto were filed after the time permitted by law and after the authorized extension of such time. The final order from which the appeal was prayed was entered June 9, 1958. On June 30, 1958, an order was entered extending the time for filing the bill of exceptions and perfecting the appeal until July 15, 1958. The appeal bond was filed July 15, 1958, and on that same date, appellant's attorney undertook to present and have signed the bill of exceptions, which had previously been approved by adversary counsel, but was unable to accomplish this, because at that time the Hon. Sylvanus Polk, Judge of the Probate

654

Court, was in Ludington, Michigan. In that situation, Special Judge Leo Bearman undertook to enter an order further extending time for filing of bill of exceptions, and otherwise perfecting appeal, which purported to extend the time through August 2, 1958. The bill of exceptions, which was actually approved and signed by the Hon. Sylvanus Polk, Probate Judge, in Ludington, Michigan, under date of July 19, 1958, and returned to Memphis, Tennessee, by "certified mail", was filed July 21, 1958.

Although our sympathies are entirely with the appellant in the matter, and we consider also that the equities are with him, we feel constrained to sustain the motion to strike the bill of exceptions. On the authority of Suggs v. State, 195 Tenn. 170, 258 S. W. (2d) 747, and Du Boise v. State. 200 Tenn. 93, 290 S. W. (2d) 646, we hold that the attempted order of further extension entered by the Special Judge July 15, 1958 was coram non judice and void. In our opinion, it would have been void even if it had been entered by the regular judge at that time, even though the regular judge might, initially, have granted an extension of time up to sixty days. Sec. 27-111, T. C. A. As was held by the Supreme Court in Tennessee Cent. Railroad Co. v. Tedder, 170 Tenn. 639, 98 S. W. (2d) 307, what counsel for appellant might have done on July 15, 1958, to get a legal bill of exceptions, when he found the Probate Judge was out of the State was that he could have requested the judge to return immediately to Shelby County, Tennessee, and sign the bill of exceptions. Upon refusal of the judge so to do, appellant might then have been entitled to obtain a new trial by means of a bill filed in the Chancery Court. In the case of Tennessee Cent. Railroad Co. v. Tedder, the trial

judge was in New York when a bill of exceptions, which like the one involved in the instant case had been approved by adversary counsel, was presented to the clerk. The trial judge was reached by long distance telephone whereupon he authorized the clerk to sign his name to the bill of exceptions, which was done. Later, on application to the Chancery Court to grant a new trial, which application was denied, the Supreme Court affirmed, stating as a reason for denying such relief, that the complainant in the Chancery suit was not free from fault in the matter. On this phase of the case, we quote from the opinion of the Supreme Court, written by Mr. Justice De Haven, as follows:

"From the facts related in the bill, it appears that counsel for complainant, when requested by the trial judge to sign his name to the bill of exceptions, called the clerk of the circuit court to the telephone and the trial judge instructed the clerk to affix his, the trial judge's signature to the bill of exceptions, which was then and there done. This occurrence was 4 or 5 days before the expiration of the 30 days allowed for the filing of the bill of exceptions. The trial judge was in New York City, and the court can take judicial knowledge of the fact that within the 4 or 5 days the trial judge could have returned to the jurisdiction. It does not appear that counsel for complainant requested the trial judge to so return. On the contrary, counsel apparently was satisfied with the placing of the name of the trial judge on the bill of exceptions by the clerk of the court. The trial judge might have returned had he been so requested. That is a matter of mere speculation, of course; but whether he would have yielded to the request or not,

it is essential to complainant's case that such request should have been made. It seems that complainant, in failing to request the judge to return and sign the bill of exceptions, cannot be held to be without fault. Particularly is this true, we think, when counsel for complainant failed to advise the judge that it would be necessary for him to sign the bill of exceptions personally, and that his name signed by the clerk would be illegal and void.'' Tennessee Central Railroad Co. v. Tedder, 170 Tenn. 639, 647-648, 98 S. W. (2d) 307, 310.

When the above-quoted language was called to the attention of the author of this opinion, at that time Chancellor, in connection with the trial of the case of O'Quinn v. Baptist Memorial Hospital, his decision in which case was affirmed by the Supreme Court in the reported decision of same in 182 Tenn. 558, 188 S. W. (2d) 346, he thought, and still thinks, that it was ridiculous to require the appellant, as a condition precedent to obtaining a new trial by decree of the Chancery Court, to make the obviously futile effort to get the trial judge to return to his jurisdiction for the purpose of signing the bill of exceptions. Be that as it may, however, that is what the Supreme Court held to be a necessary prerequisite of showing freedom from fault on the part of the applicant; and, presumably, that is what would have been required of appellant in the instant case as a prerequisite for obtaining a new trial by decree of the Chancery Court because, without fault on his part, he had been deprived of a bill of exceptions for his appeal. We know of no other way by means of which appellant might have had the testimony adduced in the Probate Court preserved for consideration by this Court.

Fortunately for the appellant in the instant case, however, his failure to get his bill of exceptions approved in a legal manner or to obtain a new trial by decree of the Chancery Court, so as to get into the record on appeal the evidence upon which the decree appealed from was based, was not fatal. The findings of fact contained in the decrees of the Probate Court entered June 2, 1958 and June 9, 1958, respectively, and from which decrees the present appeal has been perfected, are amply sufficient, in the opinion of this Court, for adequate presentation of the contentions of appellant on this appeal, even though the Probate Judge, in the decree of June 9, 1958, refused to make additional findings of fact requested by appellant. From the findings of fact contained in the decree of June 2, 1958, we quote, as follows:

"Upon the death of Andrew Jackson Lewis on April 26, 1956, the claimant, R. C. Fuller, who is the person therein nominated as executor, took the will of Mr. Lewis to, and sought advice of, counsel as to his duty in the circumstances and was advised that it was his duty in the circumstances, to offer the will; that being a nonresident, he was ineligible to serve alone as executor thereof, but that he could serve with a resident coadministrator.

"Arrangements were made to offer the will in common form and for Fuller to qualify as executor with his attorney as the resident coadministrator when the imminence of a contest prompted changing those plans and the will was offered for probate in solemn form, the petition for that purpose having been filed on May 16, 1956.

"Contests were thereupon filed, but before they could be disposed of and before the return date on the process and publications thereunder, to wit on June 12, 1956, contestants and others filed in the Chancery Court of Shelby County, Tennessee, a suit on the alleged contract to make a will, of which contract complainants claim to be donee third party beneficiaries, and procured an injunction against Mr. Fuller's proceeding with his effort to secure probate of the will of decedent or adjudication of its validity.

"Claimant sought advice of counsel as to his duty in the circumstances and was advised that as the person nominated executor therein, it was his duty to support the will in face of the contests and that having that duty, he necessarily had to seek dissolution of the injunction against his performing it, and arrangements were accordingly made to do that and to resist the Chancery suit.

"After much difficulty, dissolution of the injunction was secured, the contests were certified to, and tried in, the Circuit Court, the will offered by complainant was there upheld and returned to the Court under a judgment to that effect and thereafter the Chancery suit came on for hearing on the merits and after a three days trial, was dismissed with prejudice at the complainant's cost.

"Meanwhile it was agreed by the parties, through their attorneys that Fuller collect and hold in a Memphis bank account, disbursements from which were under injunction in the Chancery litigation, the rents from the property known in which record

as the, 'South Parkway property', disbursing therefrom on consent orders modifying the injunction the expense incident to the collection of those rents and the maintenance of the property from which they derive, which was done, reasonably and properly, so the Court finds.

"When the contests and Chancery litigation were concluded in the summer of 1957, Fuller remitted to John T. Wilkinson, the administrator pendente lite who had meanwhile been appointed by this Court, the gross rents collected on the South Parkway property, something over $900.00.

"In his claim Fuller seeks reimbursement for expenses incident to the collection of the rents so collected and remitted and to the maintenance of the property from which those rents derived as follows:

"Young Electric Company:

| | |
|---|---|
| Overhauling wiring to meet requirements of City Electrical Inspector | $178.65 |

Palmer Brothers:

| | |
|---|---|
| Premium on fire insurance policy | 56.00 |

Van Court Rental Agency:

| | |
|---|---|
| For replacing door locks, turning off water and checking plumbing | 6.00 |
| Total | $240.65 |

"He further seeks reimbursement for expenses incident to the litigation referred to above, as follows:

| | |
|---|---:|
| Thomas F. Turley, Jr.<br>   Attorney's Fees | $1000.00 |
| Aero Blue Print, Inc.<br>   Photostats of Lewis' will | 1.49 |
| The Daily News<br>   4 inserts of notices—July, 1956<br>   Re: Probate Court litigation<br>   concerning estate | 32.00 |
| Bernard Schnierer, Court Reporter<br>   ½ attendance at Chancery Court<br>   hearing in litigation concerning<br>   alleged contract to make a will, etc. | 30.00 |
| G. W. Schill, Realtor<br>   Re: as expert witness in Chancery<br>   Court litigation | 10.00 |
| | $1,073.49 |

"There seems to be no doubt that the attorney engaged by Mr. Fuller bore the brunt of the defense of the Chancery litigation and the will contest, and in their exceptions, page 3, and at the Bar exceptions (apparently clerical error for "exceptors") concede the reasonableness of the attorney's fees.

"When the time for filing creditors claims against the A. J. Lewis estate expired on ———, it became apparent to claimant, who was the residuary devisee and legatee, that the residuary estate, which included the South Parkway Property, would be insufficient to pay the $5,500.00 in specific legacies charged against it, plus the administration expenses, taxes and debts,

including the debts of the estate of Rosie Lee Lewis, Mr. Lewis' daughter, of which estate he was sole devisee and legatee and executor at the time of his death. Accordingly, Fuller renounces the legacy and devise in his favor. But claimant did not renounce the nomination as executor.

"Conclusions: The office of the administrator pendente lite is more closely analogous to that of a receiver. He is not an administrator in the broad and usual sense and he acts only until the appointed administrator or executor takes over.

"As the person nominated as executor and in possession of the will, R. C. Fuller had the duty to bring forward the will, but not having qualified as executor, he is not now entitled to reimbursement for the litigation expenses referred to above. Under the rules of the Court, a petition for the allowance of compensation for services rendered the estate by counsel should be filed by the personal representative; and under Section 30-520 of the Code, costs of administration including reasonable compensation to the personal representative's counsel is entitled to prior payment. Accordingly, his claim for reimbursement should be, and is hereby, disallowed, but without prejudice to his right to renew his claim therefor, when and if he is appointed and qualifies as executor.

"The nine hundred odd dollars rents collected by Fuller and turned over to the administrator pendente lite, under the arrangement explained above, are not a part of the residuary estate, and technically this Court does not have jurisdiction over an

alleged breach of the agreement between the parties. Claimant may be entitled to reimbursement for the expenses incident to their collection, as above detailed, but his claim for reimbursement should not now be allowed by this Court. Said claim should be disallowed without prejudice to his right to renew his claim in any suit brought therefor, or in any suit brought with reference to the fund deposited in the Union Planters Bank mentioned in the next paragraph.

"That some of the residuary beneficiaries have claimed that the estate is entitled to recover in equity from Fuller the sum of approximately two thousand eight hundred and fifty dollars, as belonging to decedent during his lifetime, which was deposited in a joint account in the Union Planters National Bank, Memphis, Tennessee, in the names of decedent and Fuller, with right of survivorship. The parties have agreed that this Court does not have jurisdiction, and is not the proper forum in which to litigate the issue of entitlement to the balance in said account; and inasmuch as said sum is greatly in excess of that amount claimed by Fuller in reimbursement, the Court is of the opinion that it would be proper for both of said claims to be adjudicated in a single suit in Chancery Court."

The decree of June 2, 1958 denied Fuller's claim for attorney's fees and expenses incident to the litigation, and also denied his claim for reimbursement of the amounts expended by him in maintaining the real estate. This decree also sets the cause for further hearing on June 3, 1958, with a provision that if "the said R. C.

Fuller does not care to qualify, and if none of the other interested parties makes application or nominations for an administrator c/t/a, the Court on its own motion will appoint an administrator c/t/a.''

On June 3, 1958, Fuller filed a request for additional findings of fact, and on the same day, Charles Lewis, adopted son of Andrew Jackson Lewis, filed a petition for appointment of himself as administrator c/t/a and of John T. Wilkinson, Jr. as coadministrator, c/t/a.

By the decree entered June 9, 1958, which recites that the cause was further heard on June 3, 1958, the application of Herbert Charles Lewis, Jr. for appointment as administrator, c/t/a was denied, and John T. Wilkinson, Jr. was appointed sole administrator, c/t/a. Said decree also denied the request of R. C. Fuller for additional findings of fact. Said decree contains the further adjudication, as follows:

"The administrator pendente lite will not now be discharged, and the matter of allowance of fees to the administrator pendente lite and his attorney is reserved for future hearings. As the above appointment of an administrator cum testamento annexo evinces, the Court finds and adjudges that the affidavit of R. C. Fuller filed herein on May 23, 1958, amounts to and constitutes a formal renunciation of his right to appointment as executor nominated in the will of Andrew Jackson Lewis, deceased. The alternative allowed under the order, heretofore entered in this cause on June 2, 1958 being hereby eliminated, the claim of R. C. Fuller should be, and is hereby denied in toto."

The appeal perfected was from the decree of June 9, 1958, as well as from that of June 2, 1958, and said decrees, including their voluminous findings of fact, as well as the affidavit of R. C. Fuller, referred to in the decree of June 9, 1958, which renounces his right to appointment as executor, are all in the record before us, even with the bill of exceptions stricken in compliance with appellees' motion. From the affidavit of R. C. Fuller, referred to above, it appears that he resides near Poplar Grove, Arkansas, approximately 95 miles from Memphis; and he ascribes his refusal to qualify as executor under the will of Andrew Jackson Lewis to failing health and not from a desire to avoid submitting himself to the jurisdiction of the courts of Tennessee. The affidavit contains an authorization for entry of his appearance in litigation which may be filed in the courts of Tennessee, as follows:

"But lest his inability and consequent unwillingness to so qualify and act at this time be made the predicate for argument that it has something to do with an unwillingness on his part to litigate in the courts of Tennessee, if any interested party can find in the facts and the law any justification, his entitlement as surviving joint depositor to the balance in the account at Union Planters National Bank, Memphis, in which he and decedent were joint depositors, he here and now authorizes and empowers his attorney, Thomas F. Turley, Jr., to accept service for him in such litigation, if and when it materializes, and further offers as an alternative to come to Memphis in such eventuality and submit to personal service therein."

■ By his assignments of error filed in this Court, R. C. Fuller contends that the Probate Court erred in refusing to allow appellant reimbursement:

1. For litigation expenses amounting to $1,073.49;

2. For expenses totaling $240.65 incurred in collecting the nine hundred odd dollars rent turned over to the administrator ad litem.

It is the contention of appellant that, as executor named under the will, it was his legal duty to produce the will for probate, to defend it against the contest in the Circuit Court, and the restraining litigation in the Chancery Court, and that his subsequent refusal to qualify as executor did not disentitle him to have the estate of Andrew Jackson Lewis reimburse him for the expenses incurred in such litigation, and for his expenses incurred in preserving the property devised by the will. We are constrained to concur, at least in part, in this contention of appellant.

Tennessee law on this subject is stated in Phillips' Pritchard's Wills and Estates, Section 316, page 303, as follows:

"The executor is presumptively the custodian of the will, and it is a duty imposed upon him by law to institute proceedings for probate, which can only be avoided by renunciation of the appointment in county court; and he may be cited to appear before the county court and required to do one or the other."

Willful refusal of an executor to comply with the law as stated above, by suppressing the will, is made an infamous crime. Sec. 39-1943, T. C. A.; sec. 40-2712, T.

C. A.; Smith v. Harrison, 49 Tenn. 230; Douglass v. Baber, 83 Tenn. 651. This principle has been so strictly applied and enforced that one nominated as executor is not excused from offering the will for probate even though he thereby risks being sued for publishing a libel contained in the will. Harris v. Nashville Trust Co., 128 Tenn. 573, 162 S. W. 584, 49 L. R. A., N. S., 897.

The duty of the person nominated as executor to offer a will for probate includes also the duty to defend it. Eslick v. Friedman, 191 Tenn. 647, 235 S. W. (2d) 808; McClure v. Wade, 34 Tenn. App. 154, 235 S. W. (2d) 835, 28 A. L. R. (2d) 104.

In Bennet v. Bradford, 41 Tenn. 471, 473, the Supreme Court, speaking through Caruthers, J., said:

"It was his (referring to the executor nominated in the will) duty to propound the will for probate. He was acting for all the legatees under the will, and this was his duty, whether he had any interest in it or not.

"He was under obligation, if he did not renounce, to take all proper steps and incur any necessary expenses to sustain the will and faithfully carry out the trusts imposed upon him.

"If this view be correct, as it seems to us it most clearly is, the estate must be liable, no matter in whose hands it may fall, under the law."

In Bennet v. Bradford, the will had been sustained and the Court reserved the question of whether the estate of the testator would be similarly liable where the contest was successful. In Bowden v. Higgs, 77 Tenn. 343, where the same question was presented after a will had

been successfully contested, the Supreme Court, speaking through Deaderick, C. J., said:

"But it seems to us, if it was the duty of the executor to propound the will and to sustain it in the courts by incurring expense to sustain it, these were obligations resting upon him, independently of the result of the contest. He might not know when he offered the will for probate, that it would be contested. When the issue was made up and certified to the Circuit Court, he could not tell what the verdict and judgment would be until it was rendered. Yet this Court has said it was his duty to fee counsel and litigate the question, and to seek to establish the will. And the statute, by placing him in the attitude of a plaintiff affirming the validity of the will before the Court, virtually imposes upon him the duty of doing all that is proper and necessary to establish the will. And all these duties are to be performed before the issue is determined or the result of the litigation can be known. Under such circumstances an executor, having no pecuniary interest in the result, should not be subjected to pecuniary loss."

In Lassiter v. Travis, 98 Tenn. 330, 332-333, 39 S. W. 226, the same result was reached even though the one named as executrix (Mrs. Lassiter) had a pecuniary interest in sustaining the will, which she failed to do when same was contested. In that case the Supreme Court, speaking through Caldwell, J., said:

"In propounding the will, and seeking to establish it, Mrs. Lassiter was, in name and in law, acting as the representative of the supposed testatrix, and not in her own name or for herself in a legal sense,

though her action, if successful, would have resulted in her personal gain ultimately. In Bennet v. Bradford, 1 Cold. 471, this court held that a nominated executor, though a beneficiary under the will, was under legal obligation to propound the will and take all proper steps, including the employment of counsel, to resist the contest and sustain the will, and that the estate, and not the interested executor, was liable for all necessary expenses incurred by him in the faithful discharge of those duties. It is true the will was sustained in that case, but no importance was attached to that fact. Like charges were allowed against the estate of the supposed testator in Bowden v. Higgs, 9 Lea 343, although the alleged will was not sustained. The court in answering the contention of contestants that such a rule would subject them 'to the payment of their adversary's fees,' said: 'But the executor named in the will, although the jury find against its validity, is regarded by our statutes and decisions as the representative of the estate, in the contest inaugurated to ascertain whether the estate is to be distributed according to the will, or according to our statutes, in cases of intestacy; and, where proceedings are instituted and conducted in good faith and upon reasonable grounds to establish a will, we think the expenses incident thereto should be borne by the estate rather than by an executor named in the will, who has no pecuniary interest in the result of the contest.' [9 Lea] 347. Here the fact that the executor had no pecuniary interest in the result of the contest is mentioned, yet it is not a reason given for the decision. The controlling points are that the executor

was in law the representative of the estate to be charged, and that he had acted in good faith. * * * It is worthy of especial remark that all of these cases gave large effect to the fact that the nominated executor is under legal obligation to propound and support the will, and that in doing this he represents the estate of the alleged testator and not himself. In view of this obligation and this representation, good faith is indispensable, and when it is exercised the executor is entitled to full protection, whatever the result of the contest, and without reference to any pecuniary interest he may have had in it. The result and his interest are unimportant questions, when good faith has been employed.'' Lassiter v. Travis, 98 Tenn. 330, 333-335, 39 S. W. 226.

In the instant case, the Probate Court has found that the appellant not only acted in good faith, but in addition, that he was successful in defending the will against the attacks made on it, both in the Circuit Court and also in the Chancery Court, and furthermore, that the expenses incurred and attorney's fees paid, were reasonable.

On behalf of the appellees in the instant case, however, it is contended that the only way attorney's fees and expenses for defending the will can be properly allowed is by crediting same against the disbursements made by the executor in his final accounting, as is provided for in Section 30-520, T. C. A., and Sections 30-1101 to 30-1110, inclusive; and that, since the appellant never qualified as executor, he has no final accounting to make, against which the disbursements here involved can be credited. In that connection, appellees contend that they were

thereby deprived of the opportunity of excepting to Fuller's accounts, and were thus denied the opportunity of questioning Fuller's right to a joint account in the Union Planters National Bank, in his name and that of Andrew Jackson Lewis with survivorship rights, which joint account has, apparently, been paid to Fuller and which, so far as the record before us indicates, has never been a part of the estate of Andrew Jackson Lewis. The Probate Judge adopted this view of the matter and disallowed appellant's claim. The decree of June 2, 1958 reserves the right of appellant to litigate elsewhere both his claim for reimbursement of expenses incurred in connection with the South Parkway property and his claim for reimbursement of expenses incurred in litigating about the will; but, as we interpret the decree of June 9, 1958, it eliminated such reservation. On behalf of appellant, it is contended that disallowance without prejudice to assert his claim in other litigation would be useless to him, assuming that the disallowance without prejudice was preserved in the decree of June 9, 1958, because if he instigated other litigation, he would be repelled on the authority of State ex rel. Dahlberg v. American Surety Co., 173 Tenn. 505, 121 S. W. (2d) 546.

In our opinion, the decision in State ex rel. Dahlberg v. American Surety Co. would not constitute a bar to appellant's assertion of his claim in any other court having jurisdiction, if the disallowance of his claim were without prejudice; but we consider this immaterial, because he has properly asserted his claim in the instant case, with reference to reimbursement of expenses incident to the will litigation, and we think it should be determined here, so far as he seeks reimbursement for the

amounts expended for attorney's fees and other expenses incurred in presenting the will for probate and defending it in the litigation which attacked it in the Circuit Court and in the Chancery Court, including attorney's fees paid in such litigation. With reference to appellant's claim for reimbursement of sums expended by him in the care and preservation of the South Parkway property, devised by the will, we think that portion of the Probate Court's decree disallowing same should be affirmed; but without prejudice to appellant's right to assert it in any tribunal having jurisdiction of the subject matter and of the necessary parties; and the reservation of appellant's right to so litigate with reference to that part of his claim should be restored, as is provided for in the decree of June 2, 1958. That portion of appellant's claim dealt with real estate devised by the will, and we think the Probate Judge was correct in ruling that that part of appellant's claim could not properly be made a charge against the estate.

With reference, however, to that portion of appellant's claim which seeks reimbursement for expenses incurred, including attorney's fees, in defending the will contest and the injunction suit brought in the Chancery Court, we think the learned Probate Judge was in error, and that he should have sustained that part of appellant's claim and ordered the administrator c/t/a, appointed by him, to pay same out of the assets of the estate, as a preferred claim. Under the provisions of Chapter 86, Acts of 1870 and Chapter 141, Acts of 1881 (Section 387 Shannon's Code) and subsequent amendments thereto, we think the Probate Court of Shelby County, as a court of record, with "original jurisdiction of all matters of probate, the administration of estates and orphans'

business, embracing all the subjects and powers enumerated in, and conferred by, sections 4201, 4203, 4204, and 4205, and 4208 of the code of 1858'', had jurisdiction of the subject matter and of all necessary parties, and should have entered a decree in favor of appellant for that portion of his claim.

The circumstance that appellant did not qualify as executor, and could not, therefore, present the matter for adjudication in the usual and customary procedural manner of claiming credit therefor in his accounts, is, we think, immaterial. Paraphrasing the language quoted above from Bowden v. Higgs, 77 Tenn. 343, 346, it seems to us that it was the duty of the person nominated as executor to propound the will and to sustain it in the courts by incurring expense to sustain it, and that these were obligations resting upon him independently of the result of the contests, and independently of whether or not he might later decline to qualify as executor. When the issue was made up and certified to the Circuit Court for contest, and when the Chancery suit was being defended, appellant could not tell what the judgments would be until same were rendered; and he had not, at that time, elected to decline the appointment as executor. Yet, as the Supreme Court has said, it was his duty to fee counsel and litigate the question, and seek to establish the will. If the will had been presented for probate in common form, the appellant would have, at that time, qualified as executor and the question here decided would not have been injected into the case. Since the will was presented for probate in solemn form, appellant could not qualify as executor until after the litigation incident thereto had terminated; but, in the meantime, his duties with reference thereto and his rights arising therefrom,

were, in our opinion, exactly the same. It must follow, therefore, that he cannot be deprived of such rights, because of his subsequent decision not to qualify as executor. The objection made by appellees, that if appellant's claim is allowed in this cause, they will thereby be deprived of the right to litigate with him about his survivorship rights to the joint bank account of appellant and Andrew Jackson Lewis, is, we think, wholly without merit. Whether or not there is to be such litigation, depends, in our opinion, on the decision of the administrator c/t/a, not on that of appellees, and such litigation should not, in any event, prejudice appellant's right to reimbursement.

For the reasons herein above stated, the decree of the Probate Court of Shelby County, Tennessee must be reversed and this cause remanded to that Court, with direction to enter a decree in favor of appellant, R. C. Fuller and against John T. Wilkinson, administrator c/t/a of the estate of Andrew Jackson Lewis, in the sum of $1,073.49, to reimburse appellant for expenses in that amount incurred in defending the will of Andrew Jackson Lewis, together with interest thereon from November 19, 1957, the date of filing his claim in this cause, and for any other proceedings consistent with this opinion. The costs of the appeal will be adjudged against the appellees, Herbert Charles Lewis, Grace Respass, and Shirley Roaldson, with instruction to the administrator, c/t/a that if said costs are not paid by them, he should pay same and deduct the amount so paid from their shares as distributees or legatees.

Avery, P.J. (Western Section), and Carney, J., concur.