IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 16, 2016 Session


**THE ESTATE OF BLAKE B. CUNNINGHAM, BY AND THROUGH BARBARA
CUNNINGHAM v. EPSTEIN ENTERPRISES LLC, ET AL.**


**Appeal from the Circuit Court for Shelby County
No. CT00373413     Rhynette N. Hurd, Judge**

_____

**No. W2015-00498-COA-R3-CV – Filed June 30, 2016**
_____


J. STEVEN STAFFORD, P.J.,W.S., concurring in result only.

I concur in the result reached by the majority Opinion with regard to whether the
Epstein Entities owed a duty to Mr. Cunningham, but I write separately to address a concern
with how the majority reaches this conclusion. I also concur with the majority Opinion's
holding that the Service Agreement cannot be relied upon by Ms. Cunningham in this case,
albeit for a different reason. Thus, I respectfully file this concurrence and will address each
of my concerns in turn.

## A. Independent Contractor Exception

At the outset, I agree that **Blair v. Campbell**, 924 S.W.2d 75 (Tenn. 1996) is
controlling law and that it has not been overturned, abrogated, or reversed by our Tennessee
Supreme Court. The Supreme Court cited **Blair** as recently as 2007, noting its ongoing
viability. *See **Bennett v. Trevecca Nazarene Univ.***, 216 S.W.2d 293 (Tenn. 2007).
Furthermore, the parties in this case do not suggest that **Blair** is no longer valid law. Thus, by
all accounts, **Blair** and its approach to the independent contractor exception remains the
controlling law in Tennessee.

I also agree with the majority's conclusion that the independent contractor exception is
not limited to cases involving repairs and, instead, may be extended to cases involving
security guards. Although the issue of whether **Blair** could apply to security guard cases was
vehemently disputed by the parties, the majority Opinion does not offer the parties to this
litigation any rationale for its decision to extend the independent contractor exception beyond
the previously recognized sphere of repair cases. Consequently, I file this separate opinion, in

part, to provide the parties with a rationale for our holding that is lacking from the majority Opinion. Nothing in **Blair** indicates that the independent contractor exception is limited to repair cases. Indeed, the **Blair** Court explained that to "hold otherwise would require the untutored owner" to have superior knowledge to the independent contractor, in an area where the independent contractor claimed to be knowledgeable. A similar exception has been found to apply to security guards injured in the line of duty in other jurisdictions. *See* **Hunley v. DuPont Auto**, 341 F.3d 491, 503 (6th Cir. 2003) ("[The plaintiff security guard] cannot [] recoup damages for harm that was allegedly caused by performing the basic duty that he was hired to perform: encountering a stressful situation relating to the [defendant's] security."); **Atlanta Braves v. Leslie**, 378 S.E.2d 133 (Ga. Ct. App. 1989) ("Leslie, by accepting employment as [a] security guard, assumed the risk that he would have such encounters on the stadium premises. Leslie was, in effect, hired to provide an element of the very security that he alleges was negligently lacking."); **Echazabal v. El Toro Meat Packing Corp.**, 506 So.2d 1100, 1101 (Fla. Dist. Ct. App. 1987) ("[T]he employee of an independent contractor cannot maintain a cause of action against a property owner where, as here, the precise duty for which he was employed (guarding the premises) resulted in his injury.") (citing **McCarty v. Dade Div. of Amer. Hosp. Supply**, 360 So.2d 436 (Fla. Dist. Ct. App. 1978)). My research does not reveal any cases in which courts outside this jurisdiction have limited the independent contractor exception only to repair/construction cases. Thus, like our sister courts, I likewise conclude that this exception may apply not only in the context of repair/construction injuries, but also with regard to injuries sustained while performing work as a security guard, depending on the specific circumstances at issue.

Most importantly, the majority opinion, as it so eloquently states, "leaves [me] to wonder" if my colleagues are holding that the situation in this case falls within the exception outlined in **Blair**. The majority concludes that "the independent contractor exception can be extended to security guards," but does not endeavor to explain whether it is indeed applying the exception to the case-at-bar. Although this issue was thoroughly briefed, the dispositive question of this appeal—whether the independent contractor exception applies to bar Ms. Cunningham's claim—is neither definitively answered nor analyzed by the majority Opinion.

Accordingly, I will endeavor to provide the parties with some rationale for my decision to apply the independent contractor exception to the facts of this case. To support my conclusion that the independent contractor exception applies, I note the following undisputed facts: (1) Mr. Cunningham was a licensed security guard trained to deal with confrontations with criminal actors; (2) at all times relevant to this case, Mr. Cunningham was classified as an independent contractor; (3) Mr. Cunningham was hired to supply armed security services on the Epstein Entities' premises; and (4) Mr. Cunningham was fatally shot by a third-party criminal actor while providing armed security on the Epstein Entities' premises.

- 2 -

Here, there can be no dispute that Mr. Cunningham was on notice that the job he was hired to perform was inherently dangerous. This Court has previously held that employment is inherently dangerous where "the danger must be involved in the performance of the contract and must result directly from the work to be done and not from the collateral negligence of the contractor." ***Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Assocs., Ltd.***, 799 S.W.2d 239, 244 (Tenn. Ct. App. 1990) (involving the employer's liability for injuries to third parties caused by independent contractors, rather than injuries to the independent contractors themselves). Mr. Cunningham was hired to provide not just basic security, but armed security. Like the plaintiff in ***Blair*** was on notice of a defective roof by virtue of the obligation he undertook to repair the roof, Mr. Cunningham was similarly on notice of potential criminal activity as his job necessarily required him to attempt to prevent and deter such activity. Such risk was implicit in his job's purpose, and, by the fact that he was armed, a confrontation with a potentially dangerous or violent criminal actor was inherent in his job as a security guard. Ms. Cunningham admitted in her amended complaint that the subject premises are located "in a high crime area" and that it was "foreseeable . . . that criminal attacks could occur due to incidences of crime that ha[d] occurred at the [premises] and within close proximity[.]"[1] She also stated that security guards are trained in how to respond to altercations with third parties. Under these circumstances, I must conclude that in this particular case, Mr. Cunningham was injured due to a danger that "result[ed] directly from the work" he was hired to perform. ***Marshalls***, 799 S.W.2d at 244. Furthermore, because of the nature of the work that Mr. Cunningham was hired to perform and the high rate of crime at the premises as admitted by Ms. Cunningham, "[t]he possibility of a face-to-face encounter with a criminal [wa]s an ordinary and obvious risk incident to [Mr. Cunningham's] employment as an armed security guard." ***Leslie***, 378 S.E.2d at 135 (Ga. Ct. App. 1989). As explained best by the Georgia Court of Appeals:

> [T]o place a duty on [the premises owner] to protect an armed guard from a generalized potential of harm is to engage in circular reasoning, "i.e., there is a potential danger so [the employee is hired as an] armed guard, [the] hiring [of] armed guards shows a potential danger, thus armed guards or other protective measures must be taken to protect the first armed guard from the original potential danger that he was hired to guard against in the first place."

---

[1] While the majority correctly points out that Tennessee Rule of Civil Procedure 56.06 precludes a party opposing a motion for summary judgment from "rest[ing] upon the mere allegations" in its complaint, such rule is not applicable in this context. Although I agree that the allegations in Ms. Cunningham's amended complaint cannot be used as evidence against the Epstein Entities, Ms. Cunningham's own admissions in her amended complaint may certainly be used against her.

*Id.* (quoting ***Hewett v. First Nat. Bank of Atlanta***, 155 Ga. App. 773, 774, 272 S.E.2d 744, 745 (Ga. Ct. App. 1980)). Thus, based on the foregoing, I would conclude that the independent contractor exception applies to the case-at-bar. I next address whether any other theory surrounding the issue of whether the Epstein Entities owed a duty of care remains viable.

### B. *Bennett v. Trevecca Nazarene University*

The majority next holds that Mr. Cunningham's initial agreement to provide security services in the case-at-bar provides an "inadequate framework" for deciding the issues in this case, in reliance on ***Bennett v. Trevecca Nazarene University***, 216 S.W.3d 293 (Tenn. 2007). I write separately, however, because delving into the issue of the voluntarily assumption of a duty within the context of ***Bennett*** is unnecessary in this case due to Ms. Cunningham's waiver of any assumption of duty argument. Additionally, and more concerning, the majority's Opinion provides a specious characterization of the ***Bennett*** case. While I agree that ***Bennett*** is helpful in that it evidences the continuing viability of the independent contractor exception, it contemplates an additional duty of care that is simply not implicated in this case.

In ***Bennett***, two plaintiff electricians filed suit against the defendant premises owner after they were injured in a high-voltage electrical explosion while working on the defendant's premises. *Id.* at 295. The plaintiffs asserted, however, that agents of the defendant affirmatively told the plaintiffs that the job involved low voltage, and had they known otherwise, would not have started the job. *Id.* at 297. The Supreme Court expressly held that the defendant could not rely upon the independent contractor exception as a shield to liability. Instead, the Court held that the independent contractor exception does not apply when "a premises owner provides an independent contractor inaccurate information germane to the contractor's work." *Id.* at 298. Stated another way, in ***Bennett***, the Supreme Court did not apply the independent contractor exception, as suggested by the majority Opinion, **despite** the fact that "the electricians were injured in a high-voltage electrical explosion," but **because** the plaintiffs were injured by high voltage electricity, a risk that was not inherent in the job they agreed to perform. The ***Bennett*** opinion demonstrates that affirmative and allegedly inaccurate representations require consideration beyond the initial agreement to employ the independent contractor. In ***Bennett***, because both electricians alleged that they were informed the job would only involve low voltage electricity, high voltage electricity (the risk that caused their injuries) was not a risk inherent in the job.

The ***Bennett*** case is factually distinguishable from the case-at-bar. Most glaringly, representations similar to those of the ***Bennett*** defendant are not at issue in this case. That is, the Epstein Entities did not affirmatively provide Mr. Cunningham any assurance that the job he was hired to perform would not involve a risk of criminal activity. While ***Bennett*** serves as the Supreme Court's most recent recognition of the viability of the independent contractor exception, the ***Bennett*** Court emphasized the narrowness of its holding, which only applies

- 4 -

when a party "fails to exercise reasonable care or competence in obtaining or communicating [] information" to an independent contractor. Indeed, in **Bennett**, the reason why the independent contractor exception did not apply to shield the defendant from liability was because the defendant had made assurances that the job would involve low voltage, a fact that is not discussed by the majority Opinion. **Id.** at 300. By making these inaccurate assurances, the defendant in **Bennett** assumed a duty of care to the independent contractors outside of what was described in the parties' contract for electrical work. Thus, I am perplexed by the majority's reliance on **Bennett** as authority in the case-at-bar despite the obvious differences between the two cases.

In the case-at-bar, Ms. Cunningham has not argued that Epstein Entities ever made assurances to Mr. Cunningham that his job would not involve criminal activity. Thus, a confrontation with a criminal actor remained an inherent risk of Mr. Epstein's job, much like the risk of roof collapse to a roofer. As affirmed by the Supreme Court, this Court noted in its opinion in **Bennett** that if the facts had been the same as in **Blair**, it is "doubtless" the independent contractor exception would apply. **Bennett v. Trevecca Nazarene Univ.**, No. M2004-01287-COA-R3-CV, 2005 WL 2487979 (Tenn. Oct. 7, 2005), *aff'd*, 216 S.W.3d 293 (Tenn. 2007). Here, the facts in **Blair**, rather than in **Bennett**, are analogous to the case-at-bar. Accordingly, I would conclude that the independent contractor exception applies to bar recovery in this case.

Still, as the majority points out, Tennessee law is well-settled that a tortfeasor may assume a duty that is not required by law. *See, e.g.*, **Draper v. Westerfield**, 181 S.W.3d 283, 291 (Tenn. 2005). Unfortunately for Ms. Cunningham, she did not present this argument in the trial court. I next turn to the issue regarding waiver of her argument.

### C. Waiver of Argument Regarding Service Agreement[2]

In her brief to this Court, Ms. Cunningham argues, however, that regardless of the general application of the independent contractor exception or the fact that Mr. Cunningham was arguably injured by a risk inherent in his job, the exception should not apply in this case because the Epstein Entities assumed a duty of care in their agreement with Allegiance. According to Ms. Cunningham, the Service Agreement is vitally important to the analysis in this case because the notice to the independent contractor in **Blair** is provided by "the repair contract itself," and it is only by contract that the independent contractor assumes "responsibility to determine the extent of the [contractor's duties]." **Blair**, 924 S.W.2d at 77. The Service Agreement in this case specifically provides that Allegiance "makes no

---

[2] Curiously, the majority posits that "[t]he Service Agreement is the framework in which the [Epstein Entities] ask us to analyze whether they have a duty of care." It should be noted that the first time the Service Agreement was referenced in correlation with the issue of voluntary assumption of a duty was in Ms. Cunningham's brief to this Court. The Epstein Entities merely replied to her assertion that the Service Agreement created a duty and argued that she had waived that argument at trial.

representations that the security requested is reasonably adequate," and that Epstein Enterprises, in contracting, was "relying upon its own knowledge and investigation as to the number and type of security personnel required." Here, Ms. Cunningham argues that the plain language of the Service Agreement places the duty to determine the appropriate security measures for the subject premises on the Epstein Entities, rather than the independent contractor. As such, she contends that the independent contractor exception cannot apply to negate the Epstein Entities' duty to provide Mr. Cunningham with a reasonably safe workplace. The majority Opinion swiftly dismisses this argument, finding that the language of the Service Agreement alone is insufficient to impart a duty of care upon the Epstein Entities. Instead, the majority holds that despite the fact that the Epstein Entities promised to base their decisions regarding security on appropriate "knowledge and investigation," that promise is apparently not enough where Ms. Cunningham failed to produce any evidence prior to the summary judgment hearing demonstrating that Epstein actually had any knowledge or did any investigation that would have revealed the "type of risk that resulted in Mr. Cunningham's death." *See infra* (discussing Ms. Cunningham's waiver based on failure to present certain depositions prior to summary judgment hearing detailing the knowledge of the Epstein Entities).

Unlike the majority Opinion, however, I express no opinion as to whether the above provision in the Service Agreement in fact removes Ms. Cunningham's claim from the exception enunciated in ***Blair***. Instead, I must conclude that this argument was waived by Ms. Cunningham's failure to present it to the trial court in response to the motion for summary judgment. At the outset, I note that Ms. Cunningham, in her brief, admits that "this particular argument was not presented in the trial court." Here, the Epstein Entities filed a properly supported motion for summary judgment. Attached to this motion was a memorandum of law in support of the motion and a statement of undisputed material facts. None of these documents mention the above clause from the Service Agreement. As previously discussed, while Ms. Cunningham responded in opposition to the motion, she did not object to any of the undisputed material facts offered by the Epstein Entities or offer any additional facts for the trial court's consideration. Importantly, Ms. Cunningham never indicates that she is relying upon the Service Agreement in arguing against summary judgment. Indeed, from our review of the record, she attached no copy of the Service Agreement to either her complaint or her response in opposition to summary judgment. *Cf.* Tenn. R. Civ. P. 10.03 ("Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit[.]") (containing certain exceptions). Simply put, the first time that Ms. Cunningham makes any argument that the Service Agreement's express terms remove this case from the province of the ***Blair*** duty exception is to this Court on appeal. Thus, the very first adjudication on the issue of whether the Service Agreement imputes a duty upon the Epstein Entities is by the majority Opinion. Respectfully, this Court's purpose is to correct errors made by trial courts, not make initial rulings on arguments not presented to the trial court. *See **Alsip v. Johnson City Med. Ctr.**,* No. E2004-

00831-COA-R9-CV, 2005 WL 1536192, at *7 (Tenn. Ct. App. June 30, 2005) (stating that Tennessee Court of Appeals is "an error-correcting intermediate appellate court"). As discussed in detail, *infra*, because Ms. Cunningham failed to present this argument in the trial court, I would conclude that Ms. Cunningham waived the issue of whether the Service Agreement imposes a duty upon the Epstein Entities.[3]

Tennessee law boasts an abundance of law concerning the waiver of arguments in the trial court. Tennessee Rule of Appellate Procedure 36(a) provides that: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Recently, in *City of Memphis v. Shelby County*, 469 S.W.3d 531 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. Aug. 14, 2015), this Court explained the well-established principle that a party waives an argument he or she fails to present to the trial court:

> It has long been the general rule that questions not raised in the trial court will not be entertained on appeal . . . . *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) . . . . "[T]here is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d at 32. Here, the City only mentioned [the argument presented on appeal] in a footnote of a pre-trial brief filed the day before trial. As in [*In re*] *M.L.P.*[, 281 S.W.3d 387, 394 (Tenn. 2009)], the City's constitutional challenge was "late-raised [and] minimally addressed." *In re M.L.P.*, 281 S.W.3d at 394. "To now rely upon the importance of this issue as grounds for appellate

---

[3]The majority declines to explain why the doctrine of waiver is inapplicable to Ms. Cunningham's argument that the Service Agreement created a duty. The majority premises its decision to forge ahead and consider such arguments based on the presentation of certain facts concerning the Service Agreement. Facts pertaining to the Service Agreement were certainly raised before the trial court; however, the specific argument that Ms. Cunningham attempts to raise on appeal was not. Stated another way, the presentation of facts differs from the presentation of an argument, which may be based on said facts. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Heilig v. Heilig*, No. W2013-01232-COA-R3CV, 2014 WL 820605, at *2 (Tenn. Ct. App. Feb. 28, 2014) (citing *Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Here, although the fact that the Service Agreement existed and created a relationship between the parties was clearly before the trial court, Ms. Cunningham's current argument that the Epstein Entities assumed a duty based upon language in the Service Agreement certainly was not.

Indeed, the majority makes no effort to distinguish any of the nearly forty authorities on waiver, including rules and caselaw, that I have cited in this separate opinion. Respectfully, the majority's conclusion fails to demonstrate how this State's well-developed waiver jurisprudence is not applicable to bar Ms. Cunningham's argument.

- 7 -

review is near hypocrisy given the short shrift it received at trial where it could have, and should have, been fully adjudicated." ***In re Adoption of E.N.R.***, 42 S.W.3d at 32. Accordingly, we find that the [plaintiff's argument] was neither presented nor decided in the trial court, and the [plaintiff] has waived its right to argue this issue for the first time on appeal. ***In re M.L.P.***, 281 S.W.3d at 394.

*Id.* at 560–61. Similarly, our Supreme Court has held that an argument not raised during the trial court proceedings is deemed waived. ***Alexander v. Armentrout***, 24 S.W.3d 267, 272 (Tenn. 2000).

Although the Service Agreement was part of the record in the trial court and was exchanged during discovery, Ms. Cunningham failed to raise it in response to the Epstein Entities' statement of undisputed facts and her response to the motion for summary judgment. This Court has previously stated that "it [is] not the trial court's responsibility to scour the record to identify any genuine issues of material fact that were not identified or argued in Plaintiffs' response." ***Jones v. City of Union City***, No. W2013-02358-COA-R3-CV, 2015 WL 9257815, at *11 n.4 (Tenn. Ct. App. Dec. 17, 2015). Additionally, "[i]n considering whether the trial court erred in granting summary judgment, we will look to the evidence that **the parties presented to the trial court** at each stage of the summary judgment proceedings to decide whether the parties met their burden of production and whether a genuine issue of fact existed." ***Cartwright v. Jackson Capital***, No. W2011-00570-COA-R3-CV, 2012 WL 1997803, at *11 n.9 (Tenn. Ct. App. June 5, 2012) (emphasis added). Recently, our supreme court emphasized that the party opposing summary judgment "**must demonstrate the existence of specific facts in the record** which could lead a rational trier of fact to find in favor of the nonmoving party." ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 265 (Tenn. 2015) (emphasis added); *see also* ***Matshushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986) (opining that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Thus, "[t]he focus is on the evidence the nonmoving party comes forward with at the summary judgment stage[.]" ***Rye***, 477 S.W.3d at 265. Here, the mere inclusion of the Service Agreement in the record is not sufficient to overcome the fact that Ms. Cunningham failed to specifically reference it during the summary judgment proceedings or raise any argument regarding the effect of the Service Agreement upon the issue of duty in this case.

Both my learned colleagues depart from my reasoning herein, instead apparently requiring that the trial court comb the record to determine whether there was reason to deny the Epstein Entities' summary judgment motion. I cannot agree that Rule 56 requires this result, nor do I believe that imposing such a heavy burden on trial courts is contemplated by our summary judgment procedure. First, I note that Rule 56.03 of the Tennessee Rules of Civil Procedure places an affirmative duty on the parties, rather than the trial court, to set forth the undisputed material facts necessary to a determination of any summary judgment

motion. Tenn. R. Civ. P. 56.03. The express purpose of this rule is to assist the court "in ascertaining whether there are any material facts in dispute." *Id.* This Court, citing our Supreme Court, previously emphasized "the importance of attorneys using Rule 56.03 statements of material facts to their fullest," explaining that trial courts and appellate courts should not be required to sift through the record to find any information that is essential to a summary judgment decision. ***Newell v. Maitland***, No. W2007-01704-COA-R3-CV, 2008 WL 2122331, at \*8 (Tenn. Ct. App. May 21, 2008 (citing ***Bennett v. Trevecca Nazarene Univ.***, 216 S.W.3d 293, 299, n. 4 (Tenn. 2007). Once the moving party has set forth his or her undisputed material facts, the non-moving party then has the burden to set forth "any additional fact that the non-movant contends are material." *Id.* As this Court explained:

> The statements of material facts submitted by the parties on a motion for summary judgment are "intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own."

***Holland v. City of Memphis***, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (citing ***Owens v. Bristol Motor Speedway, Inc.***, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001)).

A fact is material when "significant or essential to the issue or the matter at hand." ***Abdulsayed v. Hand***, No. M2012-00583-COA-R3CV, 2012 WL 5577298, at \*4 (Tenn. Ct. App. Nov. 14, 2012) (quoting *Black's Law Dictionary* 484 (7th ed. abridged 2000)). Here, the existence of a contract which may have bearing on the relationship between the parties is both a fact and material to the analysis. Indeed, Ms. Cunningham heavily relies upon this provision of the Service Agreement in arguing that summary judgment was inappropriate. In my view, Ms. Cunningham was therefore required to raise the relevant provision of the Service Agreement in her statement of undisputed material facts, or at the least in her response to the Epstein Entities' motion.

When a party fails in its obligation to set forth the facts material to the question at issue on summary judgment, the trial court cannot thereafter be faulted for only considering those facts that are provided to it and those arguments that are actually raised in response to the motion for summary judgment. Despite its reliance on ***Bennett v. Trevecca Nazarene University*** on the issue of whether the Epstein Entities owed a duty, *see supra*, the majority's Opinion overlooks another proposition posited by ***Bennett*** Court, which states: "A trial court should not need to sift through lengthy deposition testimony to find any information that is essential to its summary judgment decision. Nor should an appellate court be required to do likewise when reviewing decisions to grant or deny summary judgment." ***Bennett v. Trevecca Nazarene Univ.***, 216 S.W.3d 293, 298 n.4 (Tenn. 2007). To hold otherwise would

- 9 -

be to place the trial court in the untenable position of having to comb through the entire trial court record in order to address every conceivable argument that could have been raised in response to the summary judgment motion.

Additionally, "federal judicial decisions interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule[.]" ***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 430 (Tenn. 2011). Under the federal summary judgment procedure, federal courts have consistently held that the trial court is under no obligation to comb the trial record searching for evidence to defeat a moving party's summary judgment motion. *See e.g.,* ***Doddy v. Oxy USA, Inc.***, 101 F.3d 448, 463 (5th Cir. 1996) ("Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment."); ***Jones v. Sheehan, Young & Culp, P.C.***, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."); ***Lawson v. Sheriff of Tippecanoe Cnty., Ind.***, 725 F.2d 1136, 1139 (7th Cir. 1984) (noting that plaintiff was required to "direct the judge to the portion" of the record that was relevant to her opposition to summary judgment); ***Carmen v. San Francisco Unified Sch. Dist.***, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[A] district court is 'not required to comb the record to find some reason to deny a motion for summary judgment.'") (quoting ***Forsberg v. Pac. N.W. Bell Tel. Co.***, 840 F.2d 1409, 1418 (9th Cir.1988)); ***Diadenko v. Folino***, 890 F. Supp. 2d 975, 982 n.4 (N.D. Ill. 2012), *aff'd,* 741 F.3d 751 (7th Cir. 2013) ("[I]t is not our responsibility to comb the record searching for evidence supporting the plaintiffs' claims."); ***Arrieta v. Yellow Transp., Inc.***, No. CIV.A.3:05CV2271-D, 2009 WL 129731, at *2 (N.D. Tex. Jan. 20, 2009) ("The court considered all the evidence that plaintiffs' properly cited in their summary judgment briefing, and it had no duty to comb the entire record—which in this case included literally thousands of pages of deposition testimony—in search of additional evidence."). Because the Tennessee Supreme Court has indicated that our summary judgment standard should be "consistent" with the federal standard, these cases are highly persuasive authority that the trial court should not be required to make an exhaustive review of every document in the record that could be relevant to the determination of the summary judgment motion, where the party opposing summary judgment has shirked her duty to alert the court to the material evidence.

Other Tennessee law further convinces me that waiver is appropriate in this case. For example, in discussing the appropriate standard applicable when a party seeks to alter an order granting summary judgment on the ground of newly discovered evidence, this Court noted that the motion to alter or amend procedure:

> [W]as not intended to provide a second bite at the apple for a party who did not take a motion for summary judgment seriously until the motion was granted. Summary judgment standards are

- 10 -

> both well settled, as discussed above, and difficult for the moving party to meet. Parties on both sides of a summary judgment motion must heed those standards. The non-moving party must fully oppose a motion for summary judgment before it is granted rather than [seek to] to overturn a summary judgment after only weakly opposing the motion.

*Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003). As such, "appellate courts will ordinarily decline to consider issues being raised for the first time on appeal" and "[t]hus, arguments not asserted at trial are deemed waived on appeal." *Villages of Brentwood Homeowners Ass'n, Inc. v. Westermann*, No. 01A01-9708-CH-00388, 1998 WL 289342, at *2 (Tenn. Ct. App. June 5, 1998) (citing *Civil Serv. Merit Bd. v. Burson*, 816 S.W.2d 725, 734-35 (Tenn. 1991); *Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996); *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995)). Consequently, an appeal to this Court of a trial court's order granting summary judgment is not an opportunity for the parties to set forth novel arguments not previously raised before the trial court. Indeed, Tennessee courts have held that it is inappropriate to allow a party to take one position regarding an issue in the trial court, and then "change its strategy or theory in midstream, and advocate a different ground or reason in this Court." *State v. Abbott*, No. 01C01-9607-CC-00293, 1996 WL 411645, at *2 (Tenn. Crim. App. July 24, 1996) (citing *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988)). Here, Ms. Cunningham failed to even mention the Service Agreement, much less the specific provision relied upon in this appeal, in any way in response to the Epstein Entities' motion for summary judgment.

I understand that this is a difficult case involving the senseless death of an innocent man, and I do not lack sympathy for Ms. Cunningham. However, I am constrained to follow established precedent regarding waiver. *See Harwell v. Benson*, 76 Tenn. 344, 349 (Tenn. 1881) (indicating that a court cannot depart from the law regardless of sympathy for one party); *In re Lewis' Estate*, 45 Tenn. App. 651, 653, 325 S.W.2d 647, 648 (Tenn. Ct. App. 1958) (same). Because the trial court was not presented with this argument and allowed to make an initial ruling on it, I must follow well-settled precedent holding that such argument is waived. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal."); *State, ex rel. Cottingham v. Cottingham*, No. M200802381COAR3CV, 2010 WL 2943283, at *3 (Tenn. Ct. App. July 27, 2010) (holding that because the party did not set forth in the trial court the specific argument raised on appeal, the argument was waived); *State v. Eads*, No. E200602290CCAR3CD, 2008 WL 2557367, at *13 (Tenn. Crim. App. June 26, 2008) ("Issues **and arguments** not raised before the trial court are deemed waived on appeal.") (emphasis added) (citing *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); *State v. Turner*, 919 S.W.2d 346, 356–57 (Tenn. Crim. App. 1995)); *Caldwell v. Canada*

*Trace, Inc.*, No. W2003-00264-COA-R3CV, 2004 WL 1459418, at \*4 (Tenn. Ct. App. June 28, 2004). Thus, I respectfully disagree with the majority Opinion's consideration of the Service Agreement, as any argument that it created a duty on behalf of the Epstein Entities was waived by Ms. Cunningham.

Similarly, I am concerned that the majority's Opinion creates irreconcilable conclusions as to different issues surrounding this case. Although not described as issues of waiver, the majority Opinion applies waiver in two respects. First, the majority holds that it is "le[ft] to wonder" as to the Epstein Entities' knowledge of the criminal activity in the area. The majority Opinion fails to mention, however, that the record on appeal contains the deposition of Samuel H. Epstein, a member of the manager of the premises, Epstein Enterprises. In his deposition, Mr. Epstein testifies to his knowledge of dangerous criminal activity around the premises shortly before Mr. Cunningham's death. The majority Opinion, quite rightly, chooses to disregard this proof because it was not presented to the trial court, but was instead filed in March 2015 after the hearing on the Epstein Entities' motion for summary judgment. Although declining to say it expressly, the majority is, by implication, holding that Ms. Cunningham waived the consideration of such evidence by her failure to present it timely to the trial court. Similarly, with respect to Ms. Cunningham's oral request before the trial court for additional discovery, the majority, again without using the term "waiver" expressly, holds that she has waived that argument for her failure to comply with Rule 56.07 of the Tennessee Rule of Civil Procedure concerning summary judgment. Despite thrice applying this Court's well-settled waiver rules,[4] the majority Opinion does not enforce the same rules on the issue of whether Ms. Cunningham waived her argument concerning any consideration of the Service Agreement despite the fact that she simply did not present this argument to the trial court. Accordingly, because I feel constrained to follow the Tennessee Rules of Civil Procedure, I must depart from the majority Opinion's decision to consider Ms. Cunningham's argument concerning the Service Agreement.

Based on the foregoing, I would conclude that the Epstein Entities have carried their burden to show that summary judgment is appropriate. Additionally, I would conclude that Ms. Cunningham has failed to establish that a genuine dispute of material fact exists as to warrant a trial and affirm the trial court's grant of summary judgment in favor of the Epstein Entities.

_____
J. STEVEN STAFFORD, JUDGE

---

[4] The majority also concludes that Ms. Cunningham has waived consideration of police records for the Cherry Crest Apartments because she did not make an argument in the trial court or to this Court explaining why she was unable to obtain the records before the hearing on the motion for summary judgment. The majority's conclusion as to this issue, and its declination to apply waiver to other issues in this case, amounts to an unpredictable application of the waiver doctrine that I fear will prove problematic for future litigants seeking guidance on this issue.